**Affirmed and Memorandum Opinion filed July 7, 2015.**



In The

# Fourteenth Court of Appeals

NO. 14-14-000702-CR
NO. 14-14-000703-CR

**PATRICK DALE EARVIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause Nos. 1357121 and 1357122**

## M E M O R A N D U M   O P I N I O N

Appellant Patrick Earvin pleaded guilty to offenses of indecency with a child by contact and sexual assault of a child under age 17. *See* Tex. Penal Code Ann. §§ 21.11, 22.011 (West 2011). Pursuant to a plea agreement, the trial court assessed punishment for each offense at sixteen years' imprisonment. The sentences were to run concurrently. Earvin appeals his conviction in two issues. In his first issue, he contends that his plea was involuntary due to ineffective assistance of counsel. In

his second issue, he contends that the arresting officer did not have reasonable suspicion to stop him for a "left lane for passing only" violation. Because we lack authority to consider his ineffectiveness claim and the traffic stop was justified by reasonable suspicion, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2012, Department of Public Safety Trooper Eric Pak was working stationary patrol in his beat on the eastbound lanes of Interstate 10 between mile markers 818 and 819. While watching eastbound traffic in his rearview mirror, Pak witnessed Earvin move from the center lane to the left lane. A white truck was slightly ahead of Earvin in the center lane; however, Earvin continued driving in the left lane at a constant speed without passing the truck. After observing Earvin for twenty to thirty seconds, Pak initiated a traffic stop for a "left lane for passing only" violation.

Once Earvin pulled over to the eastbound shoulder of I-10, Pak approached the passenger side of the vehicle. At that time, Pak saw a young female passenger, C.F., sitting in the front seat sucking her thumb and avoiding eye contact. Pak asked Earvin to exit the vehicle and informed him that he would be issued a warning. When Earvin appeared visually nervous, Pak questioned him about C.F. and their destination. Earvin told Pak he was taking C.F. to her mother in Beaumont.

Trooper Pak ran Earvin's license and discovered that Earvin was a registered sex offender residing in Crosby, Texas. He then asked Earvin about his association with C.F. Earvin replied that he was dating C.F.'s mother. Pak asked C.F. to join him in the patrol car, where they unsuccessfully tried to contact her mother. During their conversation, Pak learned that C.F.'s version of events differed from Earvin's version.

Concerned about Earvin's and C.F.'s conflicting stories, Pak contacted Brandon Bess, a local agent of the Texas Department of Public Safety's Criminal Investigations Division. Bess advised Pak to proceed with an investigation. Pursuant to Bess's suggestion, Pak asked Earvin to follow him to the station. Earvin complied with that request. Another officer who had arrived during Pak's investigation followed Earvin. C.F. rode to the station in Pak's patrol car. When the three-car caravan arrived at the station, C.F. was released to Bess for further questioning. Bess then interviewed C.F. She stated that Earvin had taken her to a motel in Channelview where he took sexually explicit photographs of her, used food and new clothes to barter for oral sex, and applied lotion to her legs while rubbing her vagina. C.F. had denied Earvin's request for vaginal sex. C.F. also informed Agent Bess that similar trips to the Baytown-Channelview area had occurred on two prior occasions. C.F. showed Bess the explicit photographs, which were stored on her mobile phone. Earvin had sent the photographs to C.F. by text message. Bess was able to identify Earvin in one of these photographs.

On August 9, 2012, the State indicted Earvin on three felony offenses: sexual assault of a child, indecency with a child by touching, and promotion of child pornography. The indictments alleged two prior convictions: one for possession of a controlled substance and another for indecency with child by contact.

Earvin filed a pretrial motion to suppress. On December 9, 2013, the trial court held a hearing on Earvin's motion to suppress. At the hearing, the parties presented evidence and argument on whether the traffic stop was justified, whether the investigation exceeded the scope of the stop, and whether Earvin was under arrest at the point he was asked to follow Pak to the station. The court determined that the traffic stop was justified by reasonable suspicion. The court found,

however, that the seizure rose to the level of an arrest when Pak asked Earvin to follow him to the station. The court then suppressed all evidence gathered after Pak's request, but denied the motion with respect to evidence obtained prior to Pak's request.

On August 27, 2014, pursuant to a plea agreement, Earvin pleaded guilty to indecency with a child by contact and sexual assault of a child under age 17. In return, the State dismissed its promotion of child pornography charge and abandoned the second enhancement paragraph in the two remaining indictments. The court assessed punishment on each charge at sixteen years' imprisonment, with the sentences to run concurrently, in accordance with the plea agreement. Earvin retained the right to appeal the trial court's ruling on his motion to suppress. Earvin did not file a motion for new trial. On the day of his plea, Earvin filed a signed notice of appeal explicitly pertaining to his motion to suppress.

## II.   DISCUSSION

### A.   Ineffective Assistance of Counsel

In his first issue, Earvin claims his plea was involuntary due to ineffective assistance of counsel. We do not have authority to consider this issue.

In a plea-bargain case, a defendant can only appeal matters that were raised by written motion filed and ruled on before trial or after receiving the trial court's permission to appeal. Tex. R. App. P.  25.2(a)(2). In the absence of the trial court's permission, the voluntariness of a plea cannot be raised on appeal from a plea-bargained felony conviction. *Cooper v. State*, 45 S.W.3d 77, 81 (Tex. Crim. App. 2001).

Earvin did not have permission to appeal the voluntariness of his plea. Pursuant to a plea agreement, Earvin pleaded guilty to two felony offenses, and the

punishment assessed for each offense was not greater than that recommended by the prosecutor. Earvin executed written instruments waiving his right to trial by jury and acknowledging a plea bargain in which the State would recommend a sentence of sixteen years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Earvin acknowledged that "if the punishment assessed by the Court does not exceed the punishment recommended by the prosecutor and agreed to by you and your attorney, the Court must give its permission to you before you may prosecute an appeal on any matter in this case except for those matters raised by you by written motion filed prior to trial[.]" At the plea hearing, the trial court stated that Earvin had permission to appeal the ruling on his pretrial motion to suppress. Appellant's notice of appeal explicitly states that it is limited to the matters raised in his motion to suppress. Nothing in the record indicates that the trial court otherwise granted appellant the right to appeal any issues that were not raised by written motion prior to his guilty pleas.

On these facts, we cannot consider appellant's complaint that his guilty pleas were involuntary. *See* Tex. R. App. P. 25.2(a)(2); *Cooper*, 45 S.W.3d at 81; *Carlton v. State*, 91 S.W.3d 363, 364–65 & n.1 (Tex. App.—Texarkana 2002, no pet.). Therefore, we overrule Earvin's first issue. We turn now to Earvin's second issue.

## B.      Motion to Suppress

In his second issue, Earvin claims that the trial court erred in denying his motion to suppress because Pak did not have reasonable suspicion to stop him for a "left lane for passing only" violation. We disagree.

### *1.* *Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013). First, we afford almost total deference to the trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Id.* "[A] question 'turns' on an evaluation of credibility and demeanor 'when the testimony of one or more witnesses, if believed, is *always* enough to add up to what is needed to decide the substantive issue.'" *Id.* The trial judge is the sole judge of witness credibility and the weight given to witness testimony. *Ex parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013). If the trial court makes express findings of fact, we view the evidence in the light most favorable to the ruling and determine whether the evidence supports the factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When, as here, the trial court does not make explicit findings of fact, we assume the trial court made implicit findings of fact supported by the record, *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005), and we view the evidence in the light most favorable to the trial court's ruling. *Moore*, 395 S.W.3d at 158.

Second, we review de novo the trial court's application of the law to the facts as well as mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Abney*, 394 S.W.3d at 547; *Valtierra*, 310 S.W.3d at 447. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* at 447–48.[1]

---

[1] Although Earvin asks us to follow this court's holding in *Jaganathan*, that case is distinguishable. There, this court applied a de novo review based on indisputable video evidence. *Jaganathan v. State,* 438 S.W.3d 823, 826 (Tex. App.—Houston [14th Dist.] 2014, pet. granted). Here, in contrast, the officer did not activate the dash-cam video until he initiated the stop. After less than five seconds have elapsed in the video, Earvin has pulled over to the shoulder and stopped his vehicle. The video in this case does not capture any of the events leading up to the

## 2.    *Burden*

A defendant that moves to suppress evidence attributable to an alleged Fourth-Amendment violation bears the initial burden of rebutting the presumption of proper police conduct. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). If the defendant shows that the seizure occurred without a warrant, then it is the State's burden to prove that the seizure was reasonable. *Ford*, 158 S.W.3d at 492. In this case, the traffic stop was a warrantless seizure. Therefore, the State must prove that Pak had reasonable suspicion that Earvin had committed, was in the process of committing, or was about to commit a traffic violation.

## 3.    *Reasonable Suspicion*

A warrantless temporary detention is lawful when an officer has reasonable suspicion that an individual is violating the law. *Id.* Reasonable suspicion "exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Abney*, 394 S.W.3d at 548. This objective standard asks only if an objective basis for the temporary detention exists; the officer's subjective intent is irrelevant. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). We make determinations on reasonable suspicion by considering the totality of the circumstances at the time of the detention. *Abney*, 394 S.W.3d at 548. We must determine whether the facts available to the officer at the moment of the seizure would warrant a man of reasonable caution in the belief that the action taken was appropriate. *See Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968). The stop must be supported by specific and articulable facts at its very inception. *State v.*

---

stop, as it did in *Jaganathan*. Therefore, we must apply the more deferential abuse-of-discretion standard set forth above rather than the de novo standard applied in *Jaganathan*.

*Duran*, 396 S.W.3d 563, 568–69 (Tex. Crim. App. 2013). The reasonable-suspicion standard requires courts to make determinations on probabilities, not certainties. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *see United States v. Castillo*, 28 F. Supp. 3d 673, 676 (S.D. Tex. 2014).

### 4. Application

An officer may initiate a traffic stop if he has a reasonable basis for suspecting that a motorist has committed a traffic violation. *Vasquez v. State*, 324 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). The State is not required to show that a traffic offense was actually committed; it need only show that the officer reasonably believed that a violation was in progress. *Id.* To justify the seizure in this case, the State was required to show that the officer had reasonable suspicion that (1) the motorist committed the traffic violation of driving in the left lane without passing (2) when a sign prohibited such action. *See Abney*, 394 S.W.3d at 548; *see also* Tex. Transp. Code Ann §§ 541.304(1), 542.301, 544.004 (West 2011).

The record supports a finding that Pak reasonably believed Earvin committed a "left lane for passing only" violation. According to Pak's testimony, he observed Earvin driving in the left lane for twenty to thirty seconds. During that time, Earvin did not appear to be passing or preparing to pass any other vehicles. This observation supports the trial court's determination that Pak had reasonable suspicion Earvin committed or was in the process of committing a "left lane for passing only" violation.

The record also supports a finding that Pak reasonably believed the "left lane for passing only sign" was applicable to Earvin. Failure to comply with a traffic control device constitutes an offense only if the defendant had notice of the device and disobeyed it. *See Abney*, 394 S.W.3d at 548; *United States v. Garcia*, 976 F.

8

Supp. 2d 856, 863–64 (N.D. Tex. 2013). An officer is not required to visually observe a defendant passing a traffic control device. *See Castillo*, 28 F. Supp. 3d at 676. Although a mere hunch does not create reasonable suspicion for an investigative stop, the level of suspicion the standard requires is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less" than is necessary for probable cause. *Navarette v. California*, — U.S. —, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014).

In *Abney*, the facts did not support a finding of reasonable suspicion. 394 S.W.3d at 550. The traffic sign at issue was at least fifteen miles (and as many as twenty-seven miles) from the location of the stop. *Id.* at 545. This distance was too great on its own to support a reasonable-suspicion finding. *Id.* at 550. Additionally, the defendant was in the process of making a legal left hand turn when he was stopped. *Id.* at 545. Had he complied with the "left lane for passing only" sign, he would have committed other traffic violations, such as turning left into a crossover from the right hand lane. *Id.* at 549. The court determined that the stop was not justified by reasonable suspicion. *Id.* at 550.

In *Mouton v. State*, the facts did support a finding of reasonable suspicion. 101 S.W.3d 686, 690 (Tex. App.—Texarkana 2003, no pet.) (dictum). The stop occurred between mile markers 823 and 824 of the eastbound lanes of I-10 in Chambers County. *Id.* at 688, 690. The officer followed the defendant for a mile before stopping him. Though the officer did not witness the defendant passing any "left lane for passing only" signs, he testified that signs were posted a few miles from the traffic stop. The evidence indicated that the signs were located at mile markers 812, 820, and 827. *Id.* at 690. The court of appeals determined that these facts supported a finding of reasonable suspicion; the officer knew specific, articulable facts, such as the location of the signs, supporting the trial court's

9

finding that the defendant had indeed passed the signs. *Id.*

Similarly, in *Castillo*, the facts indicated that the officer had the requisite level of suspicion to stop the defendant. 28 F. Supp. 3d at 677. The officer first observed the defendant driving in the left hand lane roughly five miles past a "left lane for passing only" sign. *Id.* at 673. The officer did not see the defendant pass the sign. A dash-cam video, which was taken by the officer at a later date and subsequently reviewed by the court, suggested that the area in which the stop occurred was rural and not heavily traveled. *Id.* at 676. The court noted that the highway at issue linked two major cities with only one sizeable city in between. *Id.* at 675. The court observed that the particular stretch of highway did not pass through heavily populated areas. *Id.* at 675–76. Only two entrance ramps, several county roads, and few turnarounds interrupt the highway in the critical five-mile stretch. *Id.* at 676. Engaging in a probability analysis, the district court determined that the facts "easily surmount the threshold required for reasonable suspicion." *Id.* at 677.

Although Earvin relies on *Abney*, this case is more similar to *Castillo* and *Mouton*. Pak observed Earvin while on stationary patrol in his "beat," an area where he "ride[s] all the time." Pak's testimony concerning the roadway near the stop reflects his knowledge of the sign at mile marker 812 and the subsequent signs posted "every few miles" after the one at mile marker 812. Like the officer in *Mouton*, Pak's knowledge of the signs and the highway support his determination that the sign at mile marker 812 was applicable to Earvin. Additionally, Pak initiated the traffic stop approximately six miles past the traffic sign at mile marker 812. This short distance between the traffic sign and the stop is analogous to *Castillo's* five miles and *Mouton's* four miles and distinguishable from the fifteen-plus miles rejected by the Court of Criminal Appeals in *Abney*. Considering these

10

distances and the distance in the present case, along with Pak's understanding of the area comprising his beat, the record supports a finding that Pak reasonably believed the "left lane for passing only" sign was applicable to Earvin.

In sum, the evidence in this record supports the implied finding that Pak had reasonable suspicion to stop Earvin for driving in the left lane without passing. Accordingly, we overrule Earvin's second issue.

## III. CONCLUSION

We do not have authority to consider whether Earvin's plea was involuntary due to ineffective assistance of trial counsel. The record supports the trial court's determination that Pak had reasonable suspicion to stop Earvin for a "left lane for passing only" violation. We affirm the trial court's judgment.


/s/          Marc W. Brown
                    Justice

Panel consists of Justices Christopher, Brown, and Wise.

Do Not Publish — TEX. R. APP. P. 47.2(b).