

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1231-11

**RICKEY DEWAYNE ABNEY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### KAUFMAN COUNTY

**MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, JOHNSON, HERVEY, COCHRAN, and ALCALA, JJ., joined. WOMACK and KEASLER, JJ., concurred.**

### O P I N I O N

Appellant filed a motion to suppress evidence after he was found in possession of marijuana during a traffic stop.  The trial court denied the motion, and Appellant subsequently pled nolo contendere to the marijuana possession charge.  He was sentenced to fifteen days in county jail.  Appellant appealed the conviction, and the court of appeals

held that the trial court did not err by denying his motion to suppress.[1]  Appellant filed a

petition for discretionary review, which we granted to determine whether the court of

appeals erred when it held that the officer had reasonable suspicion to stop Appellant for

the traffic code violation of driving in the left lane without passing.  Having determined

that the officer did not provide specific, articulable facts that would lead him to

reasonably suspect that Appellant was engaged in a traffic offense, we conclude that the

court of appeals erred in holding that the trial court properly denied Appellant's motion to

suppress.  We will reverse.

## BACKGROUND

### *Summary of Facts*

Kaufman County Sheriff's Deputy Billy Kilgore followed Appellant for

approximately one mile before pulling him over for driving in the left lane while not

passing.  When Appellant turned left onto a crossover to make a U-turn, Kilgore pulled

the vehicle over, intending to identify the driver and issue a citation or warning regarding

the traffic violation.  Appellant was arrested and charged with possessing under two

ounces of marijuana.

Appellant filed a motion to suppress evidence, which alleged that the traffic stop

---

[1]*Abney v. State*, No. 05-10-00260-CR, 2011 Tex. App. LEXIS 5529 (Tex. App.–Dallas, July 20, 2011) (not designated for publication).

was unlawful. At the motion to suppress hearing, Kilgore testified that Appellant was traveling east on Highway 175, the road was straight, Appellant was not passing any other vehicles, and there were no vehicles in the right-hand lane. Kilgore said that a "left lane for passing only" sign was located about fifteen to twenty miles from where he first observed Appellant and that the sign provided the reasonable suspicion necessary to make the stop. Appellant presented testimony from David Miller, an investigator for the Public Defender's Office of Kaufman County, stating that the "left lane for passing only" sign Kilgore relied upon was twenty-seven miles from the conducted traffic stop. Defense counsel argued that Appellant was driving in the left lane in order to make a crossover and had not seen the sign. No additional evidence was submitted to the court regarding what transpired after the traffic stop or the circumstances of the search which produced the marijuana.

*Procedural History*

The trial court denied Appellant's motion to suppress. The trial court filed findings of fact including that the highway is "posted with signs that give notice to occupants that the left lane is for passing only," that Kilgore observed Appellant travel in the left lane "for a distance he estimated at one mile before making a u-turn at a crossover," and that Kilgore made a traffic stop "with the intention of issuing a citation for the offense of driving in the left lane without passing another vehicle." The trial court

filed conclusions of law stating, "The officer had the right to make a routine traffic stop under the circumstances because the Defendant was driving his vehicle in the left lane without passing another vehicle. Deputy Kilgore had a reasonable suspicion that the law was being violated in his presence." The trial court also found that "the legal test for a traffic stop is that another reasonable officer could have made the same determination as Deputy Kilgore that the Defendant's vehicle violated the Transportation Code which would justify issuing the driver a citation for the observed violation."

Appellant pled nolo contendere to the marijuana possession charge and was sentenced by the court to fifteen days in the county jail. Appellant appealed the trial court's order denying his motion. On appeal, Appellant argued that there was no reasonable suspicion because the "left lane for passing only" sign was not at the place of the alleged violation. The court of appeals overruled Appellant's sole issue and held that the trial court did not err by denying Appellant's motion to suppress.[2] The court of appeals stated that an officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law and that the State is not required to prove the individual committed a traffic violation, only that the officer believed a violation was in progress.[3] The court of appeals explained that, although the

---

[2]*Id*.

[3]*Id*. at *5.

lack of a sign at the time and place of the alleged violation may be a defense to prosecution for the traffic violation, the placement of the sign does not establish the test for reasonable suspicion.[4] Citing our decision in *Garcia v. State*,[5] along with *Mouton v. State*,[6] *Green v. State*,[7] and *Baker v. State*,[8] the court explained that the test is objective, based on specifically articulated facts that would lead an officer to reasonably conclude that there was a traffic violation. The court of appeals determined that the evidence supported the trial court's finding that Kilgore articulated specific facts that led him to reasonably conclude Appellant was violating the "left lane for passing only" sign.[9] Appellant filed a petition for discretionary review asking us to consider whether the court of appeals erred when it held reasonable suspicion was proven to stop Appellant's vehicle for the traffic code violation of driving in the left lane without passing.

### *Appellant's Argument*

Appellant argues that the court of appeals misconstrued this Court's cases by

---

[4]*Id*. at *6.

[5]43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

[6]101 S.W.3d 686, 690 (Tex. App.–Texarkana 2003, no pet.).

[7]93 S.W.3d 541, 545 (Tex. App.–Texarkana 2002, pet. ref'd).

[8]50 S.W.3d 143, 145 (Tex. App.–Eastland 2001, pet. ref'd).

[9]*Abney*, 2011 Tex. App. LEXIS 5529, at *7.

holding that the State did not have to prove that he committed the traffic violation of driving in the left lane without passing. Appellant cites our decision in *Amador v. State*[10] to support his contention that the court of appeals's decision improperly shifts the burden to the defendant to show that the stop was unreasonable.[11] The specific violation Appellant allegedly committed was the failure to comply with a traffic-control device by driving in the left lane without passing. However, the sign that said "left lane for passing only" was over twenty miles away. Appellant contends that the applicable language in the Transportation Code stating that a traffic control device cannot be enforced "if *at the time and place of the violation* the device is not in proper position and sufficiently legible to an ordinarily observant person" is clear and unambiguous.[12] According to Appellant, because of this clear language, the statute cannot be enforced against him because there were no signs prohibiting driving in the left lane at the time and place where he was stopped. Appellant also argues that the cases the court of appeals relied upon in which the placement of the sign led officers to reasonably conclude that a traffic offense was

---

[10]221 S.W.3d 666, 672–73 (Tex. Crim. App. 2007).

[11]While Appellant did not cite to our most recent opinion in *Amador*, his argument is fully supported by our original decision and our decision after remand. *See Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (explaining that, although a defendant who alleges a seizure in violation of the Fourth Amendment has the burden of producing some evidence that rebuts the presumption of proper police conduct, once this showing is made the burden shifts to the State to prove that the seizure was reasonable).

[12]Tex. Transp. Code § 544.004(b) (emphasis added).

being committed are distinguishable from the facts of this case. Further, Appellant asserts that the determination that the placement of these signs is merely a defense is flawed logic because these cases show that the placement of the signs is a valid factor to consider when determining if there was reason to believe a violation occurred. Appellant states that he did not violate Section 544.004 based on these facts and that Kilgore did not testify to the necessary facts to show a violation.

### State's Argument

The State argues that the facts before the trial court were sufficient to support the conclusion that Kilgore had reasonable suspicion to briefly detain Appellant to investigate the violation in question. The State contends that Appellant's claim that the sign was too far away from the location of the traffic stop is relevant to any trial for violation of the Transportation Code provision, but irrelevant to the question of reasonable suspicion to support this traffic stop. Like Appellant, the State focuses on the "at the time and place of the violation" language in Section 544.004(b); however, the State asserts that the statute does not require proof that the officer actually saw Appellant drive past the "left lane for passing only sign," but instead merely provides a statutory defense to prosecution for the offense.

## DISCUSSION

### Burden

On a motion to suppress evidence, the defendant bears the initial burden of producing some evidence that rebuts the presumption of proper police conduct.[13] Once the defendant meets this burden by establishing that the search or seizure occurred without a warrant, the burden shifts to the State to prove the search or seizure was prompted by reasonable suspicion that an individual was violating the law.[14]

***Standard of Review***

In reviewing a trial court's ruling on a motion to suppress, Texas appellate courts use a bifurcated standard of review to evaluate the totality of the circumstances and determine whether reasonable suspicion exists.[15] First, the courts must give "almost total deference to a trial court's determination of the historical facts that the record supports," and second, the courts review *de novo* the trial court's application of the law to facts, which do not turn on credibility and demeanor.[16] As we explained in *Loserth v. State*,[17] the critical factor is whether the resolution of the substantive question "turns" on an

---

[13]*Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009).

[14]*Id. See also Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); *Russel v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986).

[15]*Amador*, 275 S.W.3d at 878.

[16]*Id. See also Castro*, 227 S.W.3d at 741; *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005).

[17]963 S.W.2d 770, 772 (Tex. Crim. App. 1998).

evaluation of credibility and demeanor.[18]  If the resolution of the question does not "turn"

on the evaluation of credibility and demeanor, *de novo* review by the appellate court is

appropriate.[19]  The fact that credibility and demeanor are important factors in the trial

court's assessment does not always mean that the question "turns" on an evaluation of

credibility and demeanor.[20]  Instead, a question "turns" on an evaluation of credibility and

demeanor "when the testimony of one or more witnesses, if believed, is *always* enough to

add up to what is needed to decide the substantive issue."[21]

When, as in this case, the trial court makes findings of fact, we determine whether

the evidence, when viewed in the light most favorable to the court's ruling, supports those

findings.[22]  We then review the court's legal ruling *de novo* unless its explicit fact

findings that are supported by the record are also dispositive of the legal ruling.[23]

### *Reasonable Suspicion*

The court of appeals correctly identified the standard for reasonable suspicion.  It

---

[18]*Id.  See also Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[19]*Id.*

[20]*Id.*

[21]*Id.* at 773 (emphasis in original).

[22]*State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006).

[23]*Id.* at 819.

"exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity."[24] These articulable facts must amount to more than a mere hunch or suspicion. The State does not have to establish with absolute certainty that a crime occurred; it just has to carry its burden of proving that, under the totality of the circumstances, the seizure was reasonable. In this case, the State was required to show that the officer had reasonable suspicion that Appellant committed the traffic violation of driving in the left lane without passing when a sign (a traffic control device) prohibited such action.

Section 544.004 of the Texas Transportation Code states:

> (a) The operator of a vehicle or streetcar shall comply with an applicable official traffic-control device placed as provided by this subtitle unless the person is:
>> (1) otherwise directed by a traffic or police officer; or
>> (2) operating an authorized emergency vehicle and is subject to exceptions under this subtitle.
> (b) A provision of this subtitle requiring an official traffic-control device may not be enforced against an alleged violator if at the time and place of the alleged violation the device is not in proper position and sufficiently legible to an ordinarily observant person. A provision of this subtitle that does not require an official traffic-control device is effective regardless of whether a device is in place.[25]

---

[24]*Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

[25]TEX. TRANSP. CODE §544.004(b).

Because this Court has never defined the "at the time and place of the alleged violation" language of the Transportation Code, we will focus on whether driving in the left lane without passing can amount to a traffic violation if there is no sign prohibiting the conduct at the time and place of the alleged violation.

We consider the totality of the circumstances at the time of the detention to determine whether a reasonable suspicion existed to justify the officer's action.[26] The Transportation Code certainly indicates that if there is a sign present that says the left lane is for passing only, then it is a traffic offense to travel in the left lane when not passing another vehicle. Section 544.004(a) states that an operator of a vehicle shall comply with an *applicable* official traffic control device such as a "left lane for passing only" sign. Without such a sign present within a reasonable distance of the traffic stop, there is no offense. The court of appeals cites three cases in which defendants were stopped for driving in the left lane without passing and implies that courts have set the bar low when determining whether reasonable suspicion to conduct a traffic stop exists. However, while those cases could be interpreted as proposing that the "left lane for passing only" sign does not have to be at the location of the alleged violation, they are distinguishable from this case.

---

[26]*Garcia*, 43 S.W.3d at 530.

In each of those cases, either the sign was not at issue or the facts supported a reasonable inference that the defendant drove past the sign before being pulled over. For example, in *Mouton*, although the officer pulled the defendant over after following him for only one mile, there were "left lane for passing only" signs at mile markers 812, 820, and 827.[27] Mouton was stopped near mile marker 823 or 824.[28] These facts were specific and provided a reasonable suspicion that Mouton had passed the sign because the officer observed him driving in the left lane less than four miles from the sign. In *Baker*, the traffic stop was conducted six miles past the "left lane for passing only" sign after Baker passed the officer in the left lane and continued to drive in the left lane at a low speed.[29] Baker argued that the sign's instructions and the transportation code's definition of traffic control device were unconstitutionally vague, but the location of the sign was not at issue.[30] Similarly in *Green*, although there was evidence that Green passed both a "left lane for passing only" sign and a "slower traffic keep right," the distance between the sign and the violation was not an issue.[31] Green argued that the "left lane for passing only"

---

[27]*Mouton*, 101 S.W.3d. at 690.

[28]*Id.*

[29]*Baker* 50 S.W.3d at 145.

[30]*Id.* at 145-46.

[31]*Green*, 93 S.W.3d at 544.

sign located eleven miles away no longer applied to her after she passed the intervening "slower traffic keep right" sign.[32]  This case is distinguishable from the cases the court of appeals relied upon for support.  Here, the record does indicate that Kilgore did not know at what point Appellant entered the highway.  He explained that he followed Appellant for a one-mile stretch that did not contain a "left lane for passing only" sign and that he pulled Appellant over as he was turning left onto a crossover, assuming Appellant had passed a sign located fifteen to twenty miles behind him.  There is no evidence to support an assumption that Appellant had driven past the sign, and other evidence introduced indicated that the sign Kilgore relied upon was actually located twenty-seven miles away from the stop.  The facts support that Appellant was driving in the left lane to make a left turn, which would be an appropriate action to take as it is clearly illegal to make a left turn from the right lane.  If the facts in this case were sufficient for a stop, then anyone driving in the left lane without passing other vehicles is subject to a traffic stop if there is a "left lane for passing only" sign located anywhere on the highway, even if there is no evidence that the driver has passed such a sign.  The purpose of regulatory signs is to provide drivers with notice of  traffic laws or regulations.  According to the Texas Manual on Uniform Traffic Control Devices, these signs are required to be installed *at or near* where the regulations apply.  However, although it provides guidelines for the

---

[32]*Id*. at 546.

spacing and placement of speed limit signs, there are no specific guidelines for the spacing of the "left lane for passing only" signs. Therefore, it is necessary to determine, based on the statute, whether such a sign is applicable based on the facts of each case. In this case, the evidence indicated only that, in Kilgore's opinion, Appellant may have passed a "left lane for passing only" sign located at least fifteen miles away. Other testimony indicated that the sign was twenty-seven miles from where the traffic stop was conducted. Neither one of these scenarios places the sign at or near where the alleged violation took place. As we explained in *Robinson v. State*,[33] an officer's mistake about the legal significance of facts, even if made in good faith, cannot provide probable cause or reasonable suspicion. Given the vagueness of the statute, a "left lane for passing only" sign located at least fifteen miles away is not close enough to be applicable. We conclude that Kilgore's testimony did not support the trial court's finding of reasonable suspicion.

Does an officer have to observe the driver pass the sign, follow the driver for a certain number of miles, or present evidence that there was no entrance onto the highway between the sign and the location of the stop? While there is no bright line rule in these situations, these are certainly factors to consider when evaluating the totality of the circumstances. Here, Kilgore's belief that a "left lane for passing only" sign located fifteen miles away was applicable to Appellant does not provide probable cause or

---

[33] 377 S.W.3d 712, 722 (Tex. Crim. App. 2012).

reasonable suspicion that would lead one to reasonably conclude that Appellant committed a traffic violation.

## CONCLUSION

Because the record here does not support a finding of reasonable suspicion, we hold that the court of appeals erred in determining that the trial court properly denied Appellant's motion to suppress. We reverse the court of appeals.

Meyers, J.

Delivered: March 27, 2013

Publish