# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00021-CR

**Donald Weston King, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
### NO. 101401, HONORABLE ROBERT UPDEGROVE, JUDGE PRESIDING

## DISSENTING OPINION

Because I believe that the police officer who arrested appellant lacked reasonable suspicion for the initial traffic stop, I would reverse the judgment of conviction and remand this case to the trial court. Accordingly, I respectfully dissent from the majority's affirmance of the conviction.

At the suppression hearing, the trial court heard testimony from a single witness, Corporal Tommy Villanueva of the San Marcos Police Department. The only issue before the court was whether the officer had reasonable suspicion to make the initial traffic stop. While working patrol on the midnight shift, Villanueva said that he observed appellant failing to maintain his vehicle in a single lane, but he could not recall the number of times that occurred. He was not asked whether any other vehicles were in the area. There was also no evidence or testimony about the extent of any deviation from the lane of travel or whether appellant had crossed the center or

shoulder lines. Villanueva observed appellant make a right hand turn at an intersection and then "immediately" make a u-turn and then another turn in order to return to his original route. Villanueva did not recall whether any other vehicles were in the area or whether appellant had used a turn signal, but he stated that he did not note in the offense report that the driver had failed to signal a lane change.

Shortly after appellant had resumed travel on his original route, Villanueva initiated a traffic stop. Although the stop ultimately resulted in appellant's arrest for DWI, Villanueva testified that the only reasons for the stop were that appellant failed to maintain a single lane and had made an "illegal" u-turn. Villanueva was not asked, nor did he offer any testimony, about whether appellant's vehicle was being driven in an unsafe manner or whether he suspected that the driver of the vehicle was intoxicated. There was also no testimony about the road conditions, visibility, or any other matter related to whether appellant was driving unsafely or recklessly, including his speed of travel and weather conditions. Villanueva was not questioned about the layout of the roadways on the drawing that was admitted into evidence, but he stated that he believed the u-turn occurred on a four-lane road.

In the trial court, the State conceded that there was insufficient evidence that Villanueva had reasonable suspicion to stop appellant's vehicle based on his failure to maintain a single lane. *See* Tex. Transp. Code § 545.060 (requiring operator to "drive nearly as practical entirely within a single lane" unless movement from lane "can be made safely"). The State asserted, however, that the u-turn was illegal because appellant must have crossed a double yellow line to make the u-turn. Although there was no evidence that either road was separated by two solid yellow

2

lines—and at least some evidence to the contrary—the State asked the trial court to take judicial

notice that the u-turn occurred on a four-lane road that necessarily would have been divided by two

solid yellow lines "under state law." At the conclusion of the hearing, the trial court took the matter

under advisement and subsequently issued an order denying the motion to suppress. No findings of

fact and conclusions of law were requested or made, and the trial court never ruled on the request

to take judicial notice.[1] After appellant's motion to suppress was denied, he pleaded no contest to

driving while intoxicated and was sentenced pursuant to a plea agreement.

On appeal, appellant asserts that the record does not support the trial court's implied

finding that there was reasonable suspicion for the officer to initiate a traffic stop. The State

contends that appellant's u-turn was illegal as a matter of law under section 545.051 of the Texas

Transportation Code. In the alternative, the State contends the stop was justified under the totality

of the circumstances.

A violation of the Texas Transportation Code provides a police officer with probable

cause to stop and seize a driver. *State v. Gray*, 158 S.W.3d 465, 469 (Tex. Crim. App. 2005). An

officer may initiate a traffic stop if he reasonably suspects that the driver has violated the law. *See*

*Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). "[R]easonable suspicion requires 'that

there is something out of the ordinary occurring *and some indication that the unusual activity is*

*related to crime*.'" *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (quoting *Viveros*

---

[1] As the State concedes, if the trial court had ruled on the request for judicial notice without prior notification, appellant would have been entitled to request an opportunity to be heard after judicial notice had been taken. *See* Tex. R. Evid. 201. In any event, the State has abandoned the contention that appellant's u-turn was illegal because it occurred on a four-lane road separated by two solid yellow lines.

3

*v. State*, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992)) (emphasis added). Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity. *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). "This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists." *Ford*, 158 S.W.3d at 492.

The first basis for the stop asserted by the State is that appellant violated the law by making a u-turn. The only Texas statute that specifically addresses the legality of u-turns is section 545.102 of the Texas Transportation Code, which prohibits a driver from moving a vehicle "in the opposite direction when approaching a curve or the crest of a grade if the vehicle is not visible to the operator of another vehicle approaching from either direction within 500 feet." Tex. Transp. Code § 545.102. There is no evidence that appellant's u-turn occurred under such circumstances. There is also no evidence that appellant made the u-turn unsafely or recklessly, in derogation of posted traffic signs, without proper signaling, over a median, in a no-passing zone, without yielding to opposing traffic, from the right-hand lane of a four-lane divided highway, or in any other manner suggestive of illegal activity.

The State contends, however, that appellant's turn was per se illegal under section 545.051 of the Transportation Code. Section 545.051, which governs driving on the right side of the roadway, provides:

4

(a) An operator on a roadway of sufficient width shall drive on the right half of the roadway, unless:

> (1) the operator is passing another vehicle;
> (2) an obstruction necessitates moving the vehicle left of the center of the roadway and the operator yields the right-of-way to a vehicle that:

>> (A) is moving in the proper direction on the unobstructed portion of the roadway; and
>> (B) is an immediate hazard;

> (3) the operator is on a roadway divided into three marked lanes for traffic; or
> (4) the operator is on a roadway restricted to one-way traffic.

(b) An operator of a vehicle on a roadway moving more slowly than the normal speed of other vehicles at the time and place under the existing conditions shall drive in the right-hand lane available for vehicles, or as close as practicable to the right-hand curb or edge of the roadway, unless the operator is:

> (1) passing another vehicle; or
> (2) preparing for a left turn at an intersection or into a private road or driveway.

(c) An operator on a roadway having four or more lanes for moving vehicles and providing for two-way movement of vehicles may not drive left of the center line of the roadway except:

> (1) as authorized by an official traffic-control device designating a specified lane to the left side of the center of the roadway for use by a vehicle not otherwise permitted to use the lane;
> (2) under the conditions described by Subsection (a)(2); or
> (3) in crossing the center line to make a left turn into or out of an alley, private road, or driveway.

*Id.* § 545.051. The State asserts that appellant was not permitted to make the u-turn because, by turning, he necessarily drove left of the center line in violation of section 545.051 and there is no evidence that any of the statutory exceptions apply. According to the State, left turns (and therefore all u-turns) are generally proscribed by the Code except as permitted by the exceptions in section 545.051 and other provisions of the Code that regulate the execution of turns. *See id.* §§ 545.101

(turning at intersection), .102 (turning in opposite direction on curve or crest of grade), .103 (generally prohibiting turning unless movement can be made safely), .152 (yielding when turning left at intersection or into alley, private road, or driveway), .155 (yielding when entering or crossing highway from alley, building, private road, or driveway).

Section 545.051 does not expressly prohibit u-turns, and it has never been so construed. Moreover, construing section 545.051 to generally prohibit u-turns would render section 545.102 redundant and meaningless. *See In re Estate of Nash*, 220 S.W.3d 914, 918 (Tex. 2007) (noting that courts "should avoid, when possible, treating statutory language as surplusage"); *Larry Koch, Inc. v. Texas Natural Res. Conservation Comm'n*, 52 S.W.3d 833, 838 (Tex. App.—Austin 2001, pet. denied) ("We will avoid a construction that creates a redundancy or renders a provision meaningless."). A provision prohibiting u-turns under the specific circumstances stated in section 545.102 would be mere surplusage if u-turns were categorically prohibited by section 545.051.

Thus, it appears that u-turns are not per se illegal. Moreover, there are no specific, articulable facts in the record to support a finding that appellant's u-turn was illegal under the particular circumstances of this case.[2] Villanueva's statement that the u-turn appellant performed was "illegal" is conclusory and does not, by itself, provide this Court with any means of assessing whether his opinion was objectively reasonable. *See Ford*, 158 S.W.3d at 493 (officer's conclusory opinion that defendant was following another car too closely was unsupported by specific, articulable

_____

[2] There is some evidence that Wonder World Drive is a four-lane road, but there is no evidence it was divided by a solid single or double line, nor have I found any statute or regulation that requires such. If there were evidence that appellant had crossed over a double yellow line to make his u-turn, I agree that would have given Villanueva reasonable suspicion to make the stop. *See Boggus v. Miller*, 388 S.W.2d 240, 242 (Tex. Civ. App.—Fort Worth 1965, writ ref'd n.r.e.).

6

facts; reasonable-suspicion analysis requires objective, factual support). "[A]n officer's mistake about the legal significance of facts, even if made in good faith, cannot provide probable cause or reasonable suspicion." *Abney v. State*, 394 S.W.3d 542, 550 (Tex. Crim. App. 2013).

Nonetheless, the State contends that, without regard to the illegality of the individual vehicular movements, the stop was objectively justifiable based on the totality of the circumstances. At the suppression hearing, Villanueva testified that the only reason he stopped appellant was because he believed appellant had committed two specific traffic offenses:

> Q: And besides the two traffic violations that you state in your offense report, which would be the failure to maintain the single lane and the illegal U-turn, were there any other reasons for the stop?
>
> A.     At that point, no.

The State has conceded insufficiency of the evidence as to the first alleged offense, and I believe the evidence is likewise insufficient to sustain the stop as to the second. Even including the two alleged traffic violations, Villanueva's "specific articulable facts" are not only meager but confusing: (1) he observed the vehicle failing to maintain a single lane; (2) he observed the driver make a right-hand turn and then "immediately [swing] around to the left back into the – into the right-hand lanes"; and (3) he thought the vehicle would maintain the new direction of travel, but the driver "immediately started hitting his brakes to turn left" to return him to his original route of travel.[3] The majority relies on these circumstances, along with evidence that Villanueva is a 15-year law-enforcement veteran who was working a midnight shift, to support the reasonable-suspicion finding. None of the facts

---

[3] Villanueva testified that appellant made a *left* turn to return to his original route, but the drawing he provided depicts a *right* turn. A right turn is consistent with the officer's testimony that appellant returned to his original course of travel after making the u-turn.

are contested. Accordingly, there is no issue as to Villanueva's credibility, meaning that we review the trial court's decision de novo. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013) ("'[W]hen mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling *de novo*.'").

I cannot conclude that the "totality of the circumstances" shown here rendered the stop objectively reasonable. There is no evidence or testimony that appellant's actions were indicative of driving while intoxicated, nor did Villanueva testify that he had any such suspicion. In essence, the totality of what Villanueva observed was nothing more than the vaguely described failure to maintain a single lane and the u-turn. As discussed above, Villanueva's conclusory statement that appellant made an "illegal" u-turn, without underlying facts, constitutes no evidence of current or threatened illegality. *See Ford*, 158 S.W.3d at 493. Moreover, not only is a u-turn not illegal, it is not at all unusual. Drivers make u-turns all the time.

As to appellant's alleged failure to maintain a single lane, Villanueva testified that he could not remember how many times this happened and gave no details about it. Could the trial court "infer" from this testimony that it happened three or four times? Or even twice? Of course not. That would be rank speculation. Inferences must be reasonable and based on facts in evidence. Could the trial court "infer" that appellant's vehicle drifted into the adjacent lane by a significant amount, perhaps half the car's width? Of course not. There would be no reasonable basis for such an inference. Without resorting to pure speculation, all that can be reasonably be inferred from the officer's testimony is that appellant's car drifted a few inches across the lane divider a single time. There are simply not enough background facts to warrant any other inference.

8

"'At a minimum, the suspicious conduct relied upon by law enforcement officers must be sufficiently distinguishable from that of innocent people under the same circumstance as to clearly, if not conclusively, set the suspect apart from them.'" *Id.* (quoting *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)). "[A]rticulable facts must amount to more than a mere hunch or suspicion." *Abney*, 394 S.W.3d at 548. And Villanueva's special training and experience are not sufficient to establish reasonable suspicion in the absence of "objective factual support." *See Ford*, 158 S.W.3d at 494. Measured using an objective standard, the "totality of the circumstances" here (drifting slightly over a lane divider a single time and making a safe and legal u-turn) do not support the conclusion that there existed a reasonable suspicion that appellant was driving while intoxicated or had engaged in or was about to engage in illegal activity.

Thus, the State failed to elicit testimony that would *objectively* permit the conclusion that appellant was violating or about to violate a traffic law or any other law. Viewing the evidence in the light most favorable to the trial court's ruling, i.e., taking all of Villanueva's testimony about the underlying facts as true, the record does not support a finding of reasonable suspicion when the *law* is applied to those facts. Because the record fails to reveal an objective basis and any articulable facts to support the initial stop of appellant's vehicle, I would hold that the trial court erred in denying appellant's motion to suppress.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Filed:   November 14, 2014