JENNIFER WALKER ELROD, Circuit Judge,
dissenting:
I respectfully dissent. Both the majority opinion and the district court permit a finding of reasonable suspicion for the traffic stop at issue where the officer had no particularized evidence that a traffic viola *368 tion had occurred. Indeed, both opinions rely on the district court’s sua sponte probability calculation and independent speculation about the road in question. Because this is not a proper basis for the decision and the record reflects no other proper basis, I would reverse the district court’s denial of Castillo’s motion to suppress.
I.
At around 12:30 a.m. on November 11, 2013, Officer Collins stopped Castillo for driving in the left lane on Highway 59. It is undisputed that Castillo was driving in the left lane of Highway 59. Under Texas law, it is illegal to drive in the left lane if a traffic sign so indicates. See Tex. Transp. Code § 544.004. Therefore, the sole issue here is whether Collins had a reasonable suspicion that Castillo drove past a “left lane for passing only” sign before Collins stopped Castillo.
Collins spotted Castillo’s vehicle as it was driving northbound along Highway 59. When Collins first saw the vehicle, Collins was parked at a gas station about 5.3 miles north of the nearest “left lane for passing only” sigh. The record reflects that in that 5.3-mile stretch between the sign and the gas station, two on-ramps from major highways, as well as several county roads, intersected Highway 59. When Collins spotted Castillo, he had not seen where Castillo first entered Highway 59, or seen Castillo pass a “left lane for passing only” sign. Collins decided to follow Castillo. After following Castillo for about six miles and continuing to observe Castillo drive in the left lane, Collins stopped Castillo for the suspected traffic violation of driving in the left lane without passing. It is undisputed that during the time that Collins followed Castillo, they did not pass a “left lane for passing only” sign.
During the stop, Collins saw three people huddled on the floorboard between the back seat and the front seat. These individuals did not have documentation establishing the lawfulness of their presence in the United States, and United States Border Patrol agents determined that they were illegal aliens. All of the vehicle’s occupants, including Castillo, were placed under arrest. During the stop and following his arrest, Castillo gave statements to law enforcement regarding the incident.
After his indictment, Castillo moved to suppress all of the evidence obtained during the traffic stop, including his statements to law enforcement and Collins’s discovery of the illegal alien passengers. The district court held a hearing on the motion, at which Collins served as the sole witness. Collins testified regarding the basic details of the stop, including the distance from the “left lane for passing only” sign and the location at which he first observed Castillo, and the distance over which he followed Castillo before pulling him over. Collins testified that he stopped Castillo on suspicion that Castillo was violating a “left lane for passing only” sign. However, on cross-examination, Collins admitted that various tributary roads and an on-ramp intersect the relevant portion of Highway 59, and he offered no particular reason why he suspected that Castillo had passed the sign rather than entering the highway via one of the intersecting tributary roads. Collins specifically conceded that “[i]t could be just as likely that [Castillo] could have pulled out from one of these roads that feeds into 59 anywhere after that sign on mile zero.”
The government played a video recording of the stop, which began well after Collins began following Castillo and did not depict any of the 5.3-mile stretch of the highway between the sign and the location where Collins first saw Castillo, or *369 even much of the six-mile stretch over which Collins followed Castillo. The government also played a second video that Collins recorded a couple of days later around 7:30 a.m., when he “went back and remeasured the distances.” The second video revealed that two on-ramps and several county roads intersect Highway 59 in the 5.3-mile stretch between the “left lane for passing only” sign and the location at which Collins first observed Castillo.
Following the hearing, the district court denied Castillo’s motion to suppress, determining that because there was “over [a] 50%” chance that Castillo had passed the “left lane for passing only” traffic sign, Collins had a reasonable suspicion that Castillo had violated Texas traffic laws. United States v. Castillo, 28 F.Supp.3d 673, 676 (S.D.Tex.2014). However, at the hearing, there was no testimony regarding this 50% figure or any other probability figure, and Collins had not articulated any specific reason why he thought Castillo had driven past the “left lane for passing only” sign instead of entering the highway through one of the on-ramps north of the sign. Also, there was no evidence in the record regarding traffic patterns in the area. In order to make its “probabilistic estimation” that Castillo was already traveling along Highway 59 south of the sign, id. at 677, the district court relied entirely on its own views of the local traffic patterns. See id. at 675-77.
II.
“For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle.” United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir.2005). To have reasonable suspicion, an officer must have “a particularized and objective basis for suspecting [that] the particular person stopped” was engaging in unlawful activity. Navarette v. California, — U.S. -, 134- S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014) (emphasis added) (internal quotation marks omitted); see also United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). An officer’s mere hunch is not enough. Navarette, 134 S.Ct. at 1687 (citing Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Courts must look at the totality of the circumstances when determining whether there was reasonable suspicion. Navarette, 134 S.Ct. 1687.
As we have emphasized, an officer must have “an individualized suspicion” that “relate[s] to the individual arrestee, not a category of offenders.” Kelly v. Foti, 77 F.3d 819, 822 (5th Cir.1996) (internal quotation marks omitted); see also id. (holding that a strip search was not justified by “a generalized fear” that arrestees who do not carry photo identification and who do not quickly post bond are carrying contraband into the jail); United States v. Bonds, 268 F.3d 306, 306-07 (5th Cir.2001) (holding that the government failed to establish reasonable suspicion when it relied on past “complaints about people congregating in the area around a building .... and drinking or perhaps dealing in drugs”); United States v. Hill, 752 F.3d 1029, 1035 (5th Cir.2014) (explaining that “some evidence of a rise in crime” at a particular apartment complex, while relevant, is too “vague and generalized” to “support a reasonable suspicion that anybody found there is involved with drugs”). Yet, as Collins himself admitted at the hearing, Collins had no particularized reason to suspect that Castillo had violated the law. The only information that Collins might have relied upon to suspect that Castillo was already traveling on Highway 59 south of the sign was generalized traffic *370 patterns — nonpartieularized information that would equally apply to anyone driving in the left lane along the same stretch of road — -and in any event, at the hearing, Collins did not testify at all about traffic patterns.
Under the majority opinion’s analysis, an officer need not articulate any particularized facts regarding where a driver entered the highway or how long he had been on the highway; he need only point to general patterns in the behavior of other drivers (and perhaps he need not even do that — Collins never actually testified about any such patterns). In other words, the majority opinion allows officers to ground their suspicion on general information about a location or class of people and make probabilistic inferences about an individual based on that general information. This is akin to holding that an officer has reasonable suspicion to stop a person just for walking through a high-crime area where drug deals are known to frequently occur. However, as we have recognized, the Supreme Court has held that such a scenario provides no reasonable suspicion. See United States v. Tuggle, 284 Fed.Appx. 218, 224 (5th Cir.2008) (“[M]ere presence in a high crime area, without more, will not create reasonable suspicion for a Terry stop and frisk.”) (citing Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)). Moreover, it is no response to say that Collins saw Castillo driving in the left lane without passing. In Texas, such behavior is not a traffic violation if the driver has no notice from a “left lane for passing only” sign. Collins articulated no particularized reason to suspect that Castillo had passed such a sign. In fact, Collins recognized that several tributary roads intersected Highway 59 in the 5.3 miles between the sign and the location where Collins first saw Castillo.
The Texas cases cited in the majority opinion do not support its decision. Under Texas law, driving in the left lane is a violation only when a “left lane for passing only” traffic sign is within a “reasonable distance” of where an officer first sees the driver. Abney v. State, 394 S.W.3d 542, 548 (Tex.Crim.App.2013). In Abney, the Texas Court of Criminal Appeals addressed a scenario nearly identical to the one here, except that the traffic sign was located between 15 and 20 miles from the location where the officer first observed the defendant. The court held that this distance was too far to satisfy the requirement in Tex. Transp. Code § 544.004 that the traffic sign be “at or near” the location of the alleged violation. Id. at 549. Critically, in reversing the denial of a motion to suppress, the court noted that the record indicated that the officer “did not know at what point Appellant entered the highway.” Id. It explained that to affirm the denial of the defendant’s motion to suppress would allow officers to stop “anyone driving in the left lane without passing other vehicles ... if there is a ‘left lane for passing only’ sign located anywhere on the highway, even if there is no evidence that the driver has passed such a sign.” Id. In concluding its opinion, the Court of Criminal Appeals further noted that whether an officer observes a driver pass the sign and whether there are entrances onto the highway between the sign and the stop are “factors to consider when evaluating the totality of the circumstances.” Id. at 550.
In Mouton, a driver was stopped about three to four miles past the closest “left lane for passing only” sign. Mouton v. State, 101 S.W.3d 686, 690 (Tex.App.-Tex-arkana 2003, no pet.). The officer had testified that he followed Mouton for one mile before stopping him, which, in effect, meant that Mouton was between two and three miles from the sign when the officer first spotted him. Id. Although the appel *371 late court held that the stop occurred close enough to the sign to support a reasonable suspicion that the driver had passed the sign, the court did not address whether any on-ramps or other entrances intersected the road between the location of the sign and the location where the officer first saw Mouton.
In Baker, the Court of Appeals of Texas addressed whether the phrase “left lane for passing only” was unconstitutionally vague, not how close a sign containing this language must be to the location of the alleged violation. Baker v. State, 50 S.W.3d 143, 145-46 (Tex.App. — -Eastland 2001, pet. ref'd). Although the court held that an officer had made a valid traffic stop when he stopped a driver six miles from the nearest sign, it did not address the underlying reasons that the officer suspected that the driver saw the sign.
Finally, unlike the majority opinion, I am persuaded by the analysis in United States v. Garcia, 976 F.Supp.2d 856 (N.D.Tex.2013). In Garcia, a federal district court granted a defendant’s motion to suppress evidence found during a traffic stop in circumstances nearly identical to the case at hand. The officer in Garcia first spotted the defendant five miles from the nearest “left lane for passing only” sign, and the officer did not see the defendant pass the sign or the point at which he entered the highway. Id. at 861, 864. There were three on-ramps to the highway between the sign and the point at which the officer first spotted the vehicle. Id. at 864. In light of these facts, the district court concluded that “it was unreasonable for [the officer] to suspect that [the defendant] had passed a sign” because he “had absolutely no way of knowing when [the defendant] entered the highway.” Id. So too here. In the 5.3 miles between the “left lane for passing only” sign and the location at which Collins observed Castillo, on-ramps and county roads intersected Highway 59, and Collins offered no particularized reason why he suspected that Castillo had entered Highway 59 south of the sign.
The majority opinion asserts that the approach in Garcia, in essence, turns the reasonable-suspicion standard into one of “certainty.” I disagree. The problem for the government in Garcia, as well as in this case, was that the officer offered no particularized reason why he suspected that the defendant had driven past the “left lane for passing only” sign, not that the officer was simply uncertain whether a violation had occurred. Where a stretch of highway is intersected by on-ramps and tributary roads, it may indeed be difficult for an officer to articulate particular facts supporting his suspicion of a violation, but this difficulty is no reason for us to jettison the well-established requirement that officers base their traffic stops on reasonable suspicion supported by particularized facts. The majority opinion, sensing the difficulty that officers will have in articulating such particularized facts in these circumstances, dispenses with the particularity requirement altogether. In my view, binding precedent precludes us from giving the government such a carve-out.
III.
Moreover, even if premising reasonable suspicion on generalized traffic patterns were appropriate, the record is devoid of any evidence substantiating the district court’s “probabilistic estimation.” There is no expert testimony or expert report detailing the traffic patterns along this particular stretch of Highway 59. There is no lay testimony from Collins or anyone else regarding his own observations of the traffic patterns in the area. On the record before it, all the district court knew was that Castillo was spotted 5.3 miles north of *372 the sign, and that it was merely possible that Castillo was' already driving along Highway 59 south of the sign. In fact, on cross-examination, Collins conceded that “[i]t could be just as likely that [Castillo] could have pulled out from one of these roads that feeds into 59 anywhere after that sign on mile zero.” Collins’ testimony did not support the district court’s conclusion.
Yet, the district court made its own determination that it was more likely than not that Castillo entered Highway 59 at some point south of the sign. Castillo, 28 F.Supp.3d at 676. It based this determination on its review of Collins’s dashboard camera recordings, one of which does not depict the relevant 5.3-mile stretch of road, and the other of which was recorded at a date and time different from the date and time of the stop. According to the district court, these videos showed that the intersecting roads between the sign and where Castillo was first spotted “[were] not a heavy source of traffic.” Id. The district court continued, stating that this stretch of Highway 59 “does not pass through heavily populated areas” and that few of the intersecting routes were “heavily travelled.” Id.
There are several problems with these findings by the district court. The videos only briefly showed each intersecting road as Collins drove past. Just as the videos could have been an accurate representation of traffic patterns when Castillo was stopped, they could have also captured a momentary period of light traffic along roads that were otherwise quite busy.[1] For this reason, without any explanatory testimony, the videos have no probative value with respect to traffic patterns. Indeed, the record contains no testimony regarding the most likely sources of traffic along this stretch of Highway 59 or the population in nearby towns and neighborhoods connected to Highway 59 via the intersecting roads. Furthermore, the second video was recorded on a different date and time, and the record reveals no reason to believe that traffic patterns would be the same at that time as they were during the stop. Moreover, during the videos, traffic can be seen entering Highway 59.[2]
The district court did not explain the basis for its 50% probability finding, and no basis is apparent from this sparse record, which contains no testimony or evidence regarding traffic patterns or probabilities. Ultimately, the district court relied on its own judgment about what it thought the traffic patterns were like in southern Texas. See Fed.R.Evid. 201.[3] *373 Therefore, even assuming arguendo that generalized traffic patterns, standing alone, could properly form the basis for reasonable suspicion, I would reverse due to the lack of support in the record for the district court’s probability finding.
IV.
As the majority opinion observes, the Supreme Court has held that the standard for reasonable suspicion “is considerably less than proof of wrongdoing by a preponderance of the evidence.” Navarette, 134 S.Ct. at 1687 (internal quotation marks omitted). Whatever this minimal probability is, however, it must be established through the officer’s articulation of facts particular to the individual defendant stopped. Because the majority opinion allows for reasonable suspicion in the absence of such particularized facts and relies on the district court’s sua sponte probability determination and independent speculation about the road in question, I respectfully dissent.

. The majority opinion’s characterization of the video footage in this record is not completely accurate. Rather than showing "few heavily travelled routes,” the video shows an on-ramp for State Highway 185, which runs between Victoria and Bloomington, and surrounding the intersection between Highways 59 and 185 are several businesses, including restaurants and hotels. Even as the dashboard camera passed the intersection, a viewer can see vehicles entering Highway 59 via the ramp.

. We are just as well-positioned as the district court to view the videos. See Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (directing a court of appeals, at the summary judgment stage, to "view[ ] the facts in the light depicted by the videotape,” rather than the light most favorable to the non-movant).

."The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court’s territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably-be questioned.” Fed.R.Evid. 201. Moreover, if a court takes judicial notice of an adjudicative fact, "a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed.” It is unclear from this record whether any party had an opportunity to address whether it was appropriate to take *373 judicial notice of the traffic patterns along Highway 59.