COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| OBED RADAI ENRIQUEZ, | § | No. 08-18-00169-CR |
| Appellant, | § | Appeal from |
| v. | § | Criminal District Court No. 1 |
| THE STATE OF TEXAS | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20180D01312) |

## **O P I N I O N**

Appellant, Obed Radai Enriquez, pled guilty to possession of more than 400 grams of cocaine with the intent to deliver, and the trial court sentenced him to the statutory minimum of 15 years' confinement. Appellant's negotiated plea reserved his right to appeal the trial court's denial of his motion to suppress the bricks of cocaine discovered after law enforcement searched his vehicle. On appeal, Appellant argues that the trial court erred by finding that the drug-detection dog alerted to the odor of narcotics in his vehicle. Because we conclude that the issue does not warrant relief, we affirm the trial court's judgment.

## I. BACKGROUND

During Appellant's suppression hearing, the State presented evidence that El Paso Police Detective Manuel Gonzalez conducted surveillance on Appellant because law enforcement

1

received a tip that he was possibly trafficking drugs. On the day of Appellant's arrest, Detective Gonzalez formed a reasonable suspicion that Appellant was trafficking narcotics after he observed Appellant spending excessive time loading items into the trunk of a rented black Nissan Altima. Law enforcement officers followed the vehicle when Appellant and his wife left their home in the Nissan. Patrol Officer Michael Williams initiated a traffic stop of the Nissan after he observed Appellant commit two moving violations: Appellant first rolled through a red light, and later failed to maintain his lane of traffic. Appellant did not provide a valid Texas driver's license or proof of financial responsibility, although he and his wife did provide identification.

Officer Williams then radioed communications to run Appellant and his wife for outstanding warrants. A K-9 unit arrived during this time, and a narcotics detective spoke to Appellant. Approximately eight minutes after Officer Williams radioed in, he learned that Appellant's wife had an outstanding traffic warrant. The K-9 unit had completed the sniff of Appellant's vehicle by the time communications confirmed the passenger's outstanding warrant.

**A. Officer Moncada's Testimony**

Narcotics Unit K-9 Officer Martin Moncada testified that his drug-detection dog, Kilo, performed a sniff of the Nissan and alerted to the odor of narcotics. Officer Moncada has been a K-9 officer for 22 years. He completed 4 to 5 months of training at the police K-9 academy to receive his initial K-9 certification, which involved a narcotics detection program and advanced obedience training. Before narcotics-detection dogs are permitted to work in the field, they must be certified, and the dogs are re-certified on a yearly basis thereafter. Officer Moncada had been working with Kilo since 2013, and both he and Kilo were certified at the time of Appellant's traffic stop in February 2018. He also conducted monthly trainings with Kilo.

Kilo was certified to detect cocaine, marijuana, heroin, and methamphetamine. When Kilo "alerts," he has detected the odor of one these four drugs, and when Kilo "indicates," he has pinpointed the strongest source of the odor.

During the hearing, Officer Moncada narrated Officer Williams's time-stamped dash cam video for the trial court. Officer Williams's vehicle was parked about a car length behind Appellant's Nissan, and the dash cam provided a view from that perspective. Officer Williams initiated the traffic stop at time-stamp 15:29, and his K-9 unit arrived to the stop at 15:31. After Appellant refused law enforcement's request to search the Nissan, Officer Moncada informed Appellant that he was going to conduct a canine sniff of the exterior of the Nissan, at 15:35:10.

Officer Moncada described that he began the exterior canine sniff on the front passenger side of the Nissan at 15:39:22, where Kilo did not alert. Kilo then walked across the front of the Nissan and turned the corner. When Kilo was in front of the open driver's side window, the dog alerted to the odor of narcotics by (1) changing his body language, (2) his breathing, (3) the movement of his tail, and (4) by putting his head up on the driver's side window. Officer Moncada stated that he permits Kilo to move when the dog has alerted and is "on odor," so that Kilo can further smell the odor and trace the source. After Kilo alerted, he jumped through the open driver's side window of the Nissan and into the automobile, to "pinpoint and trace the strongest source of narcotic odor." Officer Moncada testified that he did not instruct Kilo to jump through the window.[1]

Once, inside the vehicle, Kilo alerted to the front passenger seat and was "working the back area of the backseat." Officer Moncada retrieved Kilo and directed the dog to continue an exterior sniff. Kilo alerted when he was at the trunk, at 15:39:53. Officer Moncada thereafter searched

---

[1] Appellant did not raise any issues concerning the legality of the interior sniff on appeal.

Appellant's vehicle and discovered six bricks of cocaine concealed in panels underneath the lining of the trunk.

## B. The Trial Court's Relevant Findings of Fact and Conclusion of Law

The trial court denied Appellant's motion to suppress and made explicit findings of fact and conclusions of law. The trial court's findings relevant to this appeal include:[2]

> 32. [Officer] Moncada is a certified K-9 handler and was called to the scene to conduct a K-9 sniff.

> 36. [Officer] Moncada retrieved his canine, Kilo, and began conducting an exterior sniff of the car.

> 37. Kilo alerted to the outside driver's side door area then in an effort to pinpoint the scent, jumped into the open driver's side window of the car and alerted to the front passenger area.

> 38. [Officer] Moncada then retrieved Kilo from the interior of the car to finish the exterior sniff.

> 39. Kilo then alerted to the trunk area of the vehicle.

> 43. [Officer] Moncada's search of the vehicle yielded [six] bricks of cocaine in the trunk of the car.

The trial court's relevant conclusion of law included:

> 5. Once canine Kilo alerted to the driver's side door of the defendant's rental car, [Officer] Moncada had probable cause to conduct a search of the vehicle. "The law is well established that as soon as a drug-detection dog alerts on a car, officers have probable cause to search the car without a warrant." *See Parker v. State*, 182 S.W.3d 923, 924 (Tex.Crim.App. 2006).

---

[2] Appellant's motion to suppress alleged additional state and federal constitutional violations, including that the initial stop was unlawful and law enforcement illegally extended a completed traffic stop to conduct the canine search. Appellant does not raise those issues on appeal.

## II. ISSUE ON APPEAL

The trial court based its finding that Kilo "alerted" on Officer Moncada's testimony as a trained canine handler, and Appellant frames the issue on appeal as a challenge to the credibility of that testimony. Appellant alleges that "[t]he [trial court] erred when [it] found [Officer] Moncada to be credible." He claims that Officer Moncada's testimony was "confusing, contradictory, and vague," and that it was contradicted by Officer Williams's dash cam video. Appellant argues that this Court should not afford the trial court's fact findings the deference generally required on review, because the findings are not supported by the record.

The State responds that Officer Williams's dash cam video does not contradict the trial court's finding that Kilo alerted to Appellant's vehicle or that Officer Moncada was a credible witness. We agree and conclude that Appellant's argument does not warrant relief.

### A. Controlling Law

The Supreme Court has held that a canine sniff of the exterior of a vehicle during a lawful traffic stop is not a search within the meaning of the Fourth Amendment. *See Illinois v. Caballes*, 543 U.S. 405, 408-09 (2005) (indicating that a canine sniff revealed no information other than the location of contraband an individual had no right to possess); *State v. Weaver*, 349 S.W.3d 521, 528 (Tex.Crim.App. 2011). "If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Florida v. Harris*, 568 U.S. 237, 246-47 (2013) (noting that the same is true in the absence of formal certification, so long as the dog recently successfully completed a training program that evaluated his proficiency in locating drugs). A probable-cause hearing concerning a dog's alert must provide the defendant an opportunity to challenge the dog's reliability, by cross-examining the testifying officer or introducing his own fact or expert witness. *See id.* at 247. The question to be determined at such

5

a hearing is "whether all the facts surrounding the dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.*

Appellate courts review a trial court's ruling on a motion to suppress under a bifurcated standard. *See State v. Arellano*, 600 S.W.3d 53, 57 (Tex.Crim.App. 2020). A trial court's findings of historical fact are afforded almost total deference if they are reasonably supported by the record. *See id.*, *citing Sims v. State*, 569 S.W.3d 634, 640 (Tex.Crim.App. 2019). The same deferential standard of review is applied to a trial court's determination of fact that is based upon a video recording admitted at the suppression hearing. *See State v. Duran*, 396 S.W.3d 563, 570 (Tex.Crim.App. 2013). A reviewing court must also defer to the trial court's factual findings concerning whether a witness actually saw what was depicted on a video.[3] *See id.* at 571. A trial court's application of the law of search and seizure is reviewed *de novo*. *See id.* at 570.

When the trial court makes findings of fact, a reviewing court determines whether the evidence, viewed in the light most favorable to the court's ruling, supports those findings. *See Abney v. State*, 394 S.W.3d 542, 547 (Tex.Crim.App. 2013). The winning side is afforded the "strongest legitimate view of the evidence," along with all reasonable inferences that can be derived from it. *Duran*, 396 S.W.3d at 570, *quoting Weaver*, 349 S.W.3d at 525. The trial court

---

[3] Appellate courts may review "indisputable visual evidence" contained within a video recording *de novo*, assuming the video does not pivot on an evaluation of credibility and demeanor. *See Duran*, 396 S.W.3d 563, 570 (Tex.Crim.App. 2013); *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex.Crim.App. 2000) (declining to afford almost total deference to trial court finding of clear and convincing evidence of defendant's consent to be searched when video showed that the defendant was surrounded by four officers who had him backed up with his hands against the hood of his car and officer was reaching for defendant's pants). Appellant does not argue that Officer Williams's dash cam video offers indisputable visual evidence that Kilo did not alert to the odor of narcotics, or that this Court should examine the recording under a *de novo* standard of review. He posits his claim as a "challenge to [Kilo's] handler's credibility," and argues that the trial court's findings are exempted from the usual "great deference" on review because they are not supported by the record. Because Kilo's behavior on the video must be explained by a person with knowledge of drug-detection dog conduct in order for the recording to be relevant, we conclude that the trial court's finding was based on an evaluation of Officer Moncada's credibility and demeanor. Nonetheless, we also conclude that Appellant has not demonstrated that he is entitled to relief even if we view the video *de novo*. *See Duran*, 396 S.W.3d at 570.

is the "sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000) (en banc).

## B. Application

Viewing the evidence in the light most favorable to the trial court's findings, Officer Williams's dash cam video does not provide a basis upon which this Court can invalidate the trial court's findings. *See Abney*, 394 S.W.3d at 547. Appellant contends that several portions of the recording contradict Officer Moncada's testimony, and we address these in turn.

Appellant argues that the dash cam depicts Kilo wagging his tail before the sniff begins, as Officer Moncada leads the dog from the K-9 unit to the Nissan. He uses this claim to argue any subsequent tail wag could not be the sign of an alert. The video is not cinematic; "Dashboard-mounted video cameras do not create Cecil B. DeMille productions." *Madden v. State*, 242 S.W.3d 504, 516 (Tex.Crim.App. 2007). In the very short footage, Kilo appears to both briefly wag his tail, but also move his tail in tandem with how his body moves as he walks towards Appellant's vehicle. Appellant's argument is hampered here due to the angle of the dash cam, the position of Officer Moncada's body, and the quality of video. In addition, the record does not contain evidence indicating that a canine should not wag its tail en route to the vehicle before a sniff begins, or that this behavior renders a subsequent alert invalid. Officer Moncada also testified that Kilo alerted when the dog "change[d] his body language, breathing, [and] his tail[.]"

Appellant also maintains that Kilo does not look at the Nissan as he is led to the passenger side door to begin the sniff. The record does not contain evidence indicating that the placement of a dog's eyes prior to a sniff renders a subsequent alert invalid. While Kilo's eyes cannot be seen on the video, it would seem that the dog looked at the passenger side door because he walked straight to it. Kilo's sniff of the passenger side is largely conducted outside of the view of the dash cam, at 15:39:21, and the dog had to walk up on a curb to sniff the vehicle.

7

Appellant further indicates that the recording shows that Kilo did not sit, wag his tail, or breathe heavily when he alerted, in contradiction to Officer Moncada's testimony. Kilo's tail is not in the dash cam's view as he approaches the driver's door from the front of the Nissan, because he walks with his head towards the camera, at 15:39:27. Officer Moncada stands in front of Kilo's body when the dog stops, turns to the side, and puts his head towards the driver's side door, at 15:39:30. Kilo's breathing is not discernable on the video, and his tail is blocked by Officer Moncada's body. The video depicts Kilo putting his head near the driver's side window, at 15:39:31.[4] Officer Moncada testified that he had been working with Kilo for more than five years and that Kilo changed his breathing and alerted. The record does not contain evidence indicating that Kilo did not change his breathing. *Cf. Madden*, 242 S.W.3d at 513-14 (noting that cross-examination questions alone are not affirmative evidence that can create a disputed fact issue warranting an instruction under Texas Code of Criminal Procedure article 38.23(a)).

Finally, Appellant contends that Officer Moncada's testimony was inconsistent because he stated that Kilo sat at the driver's door, to both alert and indicate the odor of narcotics. Officer Moncada actually testified that Kilo "want[ed] to go into a sit position" at the driver's side door, and that Kilo never touched his hind end to the ground at any point of the sniff.

While Officer Moncada narrated the dash cam video, he stated at one point that Kilo was "already alerting and indicating" at the driver's exterior door. Throughout the remainder of his testimony, Officer Moncada stated that Kilo alerted at the door. Considering the record in the light

---

[4] The trial court's finding that "Kilo alerted to the outside driver's side door" provided law enforcement with probable cause to search Appellant's vehicle. *See Florida v. Harris*, 568 U.S. 237, 246-47 (2013). We thus do not need to analyze any portion of the canine sniff beyond this point but will briefly address Appellant's remaining allegations. Officer Moncada's body is in front of Kilo while the dog sniffed the rear driver's side panel of the Nissan, at 15:39:54. Appellant argues that the video shows that Kilo did not sit or stop at the trunk of the vehicle. Officer Moncada testified that Kilo alerted but did not indicate at the trunk, which meant the dog did not sit and was permitted to move to find the source of odor.

most favorable to the trial court's ruling, Officer Moncada's use of the term "alerting and indicating" instead of "alerting" in one sentence of forty-eight pages of testimony does not invalidate the trial court's findings.[5] *See Baird v. State*, 398 S.W.3d at 220, 226 (Tex.Crim.App. 2013) (noting that a trial court is free to believe or disbelieve any part of a testimony it deems appropriate). In addition, Officer Moncada testified that "the most important thing is the alert." The Supreme Court echoed the same language to announce that a "dog's alert provides probable cause to search." *Harris*, 568 U.S. at 247.

Providing the State with the strongest legitimate view of the evidence and all reasonable inferences that can be derived from it, Appellant has not demonstrated that the trial court's finding that Kilo alerted to the odor of narcotics was not reasonably supported by the record. *See Duran*, 396 S.W.3d at 570. The finding that Kilo alerted to the driver's side door provided law enforcement with probable cause to search Appellant's vehicle. *See Harris*, 568 U.S. at 247. As such, we overrule the issue.

## III. CONCLUSION

Having overruled Appellant's issue on appeal, we affirm the trial court's judgment adjudicating guilt.

JEFF ALLEY, Chief Justice

August 14, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

---

[5] Appellant also argues that the trial court's findings are not reasonably supported by the record because Officer Moncada's testimony amounted to a vague assertion that a canine handler is only required to read the dog. Because the record does not contain evidence demonstrating that Officer Moncada's performance of his duties was derelict during the canine sniff, we do not conclude that this argument warrants relief.