# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-41425

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JOE ANGEL CASTILLO,

Defendant–Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**

September 11, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before CLEMENT, PRADO, and ELROD, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This is an appeal from a motion to suppress evidence arising from a traffic stop. Defendant–Appellant Joe Angel Castillo conditionally pleaded guilty to bringing in and harboring aliens in violation of 8 U.S.C. § 1324. Texas Department of Public Safety Officer Jeremiah Collins discovered three unauthorized aliens in the backseat of Castillo's vehicle during a traffic stop on Highway 59 outside of Victoria, Texas. Collins claims that he stopped Castillo for driving in a left lane reserved for passing, in violation of Texas law. Castillo contends the stop violated the Fourth Amendment because Collins had no reasonable suspicion to believe Castillo committed this traffic infraction. He appeals the district court's denial of his motion to suppress the evidence Collins acquired as a result of the stop. We affirm.

No. 14-41425

## I. BACKGROUND

In the early morning hours of November 11, 2013, Officer Collins was conducting a traffic patrol on Highway 59 in Victoria County, Texas. He was parked at a gas station along the highway observing traffic when he saw a white Ford Explorer driving north in the left-most lane. A sign reading "left lane for passing only" is located 5.3 miles from where Collins first saw the Explorer. A video recorded by Collins's dashboard camera at a later date indicates that Highway 59 North intersects several country roads and turnarounds as well as two entrance ramps in the stretch between the sign and Collins's post at the gas station.

Collins pulled out of the gas station to follow the car. He entered the highway and passed a handful of vehicles, and after about a minute and a half—approximately eight miles from the sign—he caught up with the Explorer, which was still driving in the left lane. Collins followed the vehicle for an additional three miles. Twice Collins pulled up beside the Explorer in the right-hand lane and then fell back again, to give it an opportunity to change lanes. The Explorer remained in the left lane. When Collins pulled alongside the Explorer, he noticed a young woman in the passenger seat with a "deer-caught-in-the-headlights kind of look". He thought he "possibly had a human trafficking case."[1] Collins turned on his lights to pull over the Explorer. When the passenger rolled down the window, Collins saw three people huddled between the back seat and the front seat on the floorboard. He identified the driver as Defendant–Appellant Castillo and the passenger as Giselle Lysette Gonzalez.

---

[1] The Government does not advance this argument on appeal, stating: "Given the insufficiently developed record on this issue in the district court, the United States does not rely on this alternative ground in seeking affirmance." (citing *United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011)).

No. 14-41425

A federal grand jury indicted Castillo on one count of conspiring to transport aliens within the United States and three counts of transporting certain aliens within the United States, in violation of 8 U.S.C. § 1324. Castillo moved to suppress the evidence from the traffic stop, including the discovery of the undocumented passengers, as obtained in violation of the Fourth Amendment. The district court held an evidentiary hearing and denied the motion in a written opinion. Castillo pleaded guilty to the conspiracy count via a conditional plea agreement in which he reserved his right to appeal the district court's ruling on the suppression motion. He was sentenced to eighteen months in prison, three years of supervised release, and a $100 special assessment. Castillo timely appealed.

## II. DISCUSSION

The district court had jurisdiction over this federal criminal prosecution under 18 U.S.C. § 3231. We have jurisdiction to review the district court's final judgment of conviction pursuant to 28 U.S.C. § 1291.

In evaluating a ruling on a motion to suppress, this Court reviews questions of law de novo and factual findings for clear error. *United States v. Wright*, 777 F.3d 769, 773 (5th Cir.), *cert. denied*, 135 S. Ct. 2821 (2015). Whether an officer had reasonable suspicion to support a stop is treated as a question of law. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996). The evidence is viewed in the light most favorable to the prevailing party in the district court—in this case, the Government. *See United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012) (per curiam). "[A] reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, 517 U.S. at 699.

The Government bears the burden of proving that Collins's stop was supported by "a reasonable, articulable suspicion that criminal activity is

3

afoot." *United States v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000); *see also Terry v. Ohio*, 392 U.S. 1, 30 (1968) ("[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."). "Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (citations and internal quotation marks omitted). "In determining whether the officer's suspicion, as based on specific and articulable facts, was reasonable, the totality of the circumstances must be considered." *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (citing *United States v. Arvizu,* 534 U.S. 266, 273–74 (2002)). A traffic violation provides officers with authority for an investigative stop. *United States v. Sanchez–Pena*, 336 F.3d 431, 437 (5th Cir. 2003).

Here, Collins asserts that he stopped Castillo on reasonable suspicion that he was driving in the left lane without passing, in violation of Texas law. Left-lane driving is regulated via the sign-compliance provision of the Texas Transportation Code:

> (a) The operator of a vehicle . . . shall comply with an applicable official traffic-control device placed as provided by this subtitle . . . .
> (b) A provision of this subtitle requiring an official traffic-control device may not be enforced against an alleged violator if at the time and place of the alleged violation the device is not in proper position and sufficiently legible to an ordinarily observant person.

Tex. Transp. Code § 544.004.

The Texas Court of Criminal Appeals has authoritatively interpreted this provision of the transportation code as applied to a "left lane for passing

only" sign. *Abney v. State,* 394 S.W.3d 542, 548 (Tex. Crim. App. 2013).For a driver in the left lane to violate the sign-compliance provision, he must have notice, i.e., there must be a sign "within a reasonable distance of the traffic stop."[2] *Id.* The *Abney* court reasoned that because signs are intended to provide drivers "with notice of traffic laws or regulations," they are required to be "*at or near* where the regulations apply." *Id.* at 549. However, because "there are no specific guidelines for the spacing of the 'left lane for passing only' signs," courts must determine "whether such a sign is applicable *on the facts of each case.*" *Id.* at 549–50 (emphasis added).

Applying this principle, the *Abney* court reversed the trial court's denial of a motion to suppress evidence obtained as a result of a left-lane-violation traffic stop. *Id.* at 550. A "left lane for passing only" sign was located "about fifteen to twenty miles" from where the officer first observed the defendant. *Id.* at 545. The officer followed the defendant for approximately one mile before making the stop. *Id.* at 544. Defense counsel made a credible argument that the defendant had been driving in the left lane in order to make a U-turn using the available crossover and had not seen the sign. *Id.* at 545. The Court of Criminal Appeals concluded that the facts did not support a finding of reasonable suspicion under Texas law. *Id.* at 549–50.

In contrast, Texas courts have found valid stops that occurred between three and six miles from a sign. The Texarkana Court of Appeals found a stop

---

[2] We note that our decision is in tension with a prior panel's unpublished decision in *United States v. Castro*, 480 F. App'x 782, 784 (5th Cir. 2012) (per curiam). We are not bound to apply *Castro* because *Castro* was an unpublished case decided on plain error. We are, however, bound by the decisions of the Texas court of last resort on criminal matters, and we are therefore obligated to follow its interpretation of the Texas Transportation Code. Because *Castro* was decided on plain error and the Texas Court of Criminal Appeal subsequently authoritatively interpreted section 544.004 of the Texas Transportation Code as applied to "left lane for passing only" signs in *Abney*, we construe section 544.004 in accordance with *Abney*, not *Castro*.

was supported by reasonable suspicion in *Mouton v. State*, 101 S.W.3d 686, 690 (Tex. App.—Texarkana 2003, no pet.). The officer pulled over the defendant after following him for "at least a mile." *Id.* There was evidence that "left lane for passing only signs" appeared three or four miles from the stop. *Id.* Similarly, in *Baker v. State*, 50 S.W.3d 143 (Tex. App.—Eastland 2001, pet. ref'd), the Eastland Court of Appeals approved a stop that took place approximately six miles past a "left lane for passing only sign." 50 S.W.3d at 145–46.[3] The officer testified that the car did not timely move to the right-hand lane after passing the officer, but rather continued to travel in the left lane for a distance between one quarter and three quarters of a mile. *Id.* at 145.

Castillo relies principally on a federal district court opinion that placed heavy emphasis on the presence of entrance ramps between the sign and the site of the stop. *United States v. Garcia*, 976 F. Supp. 2d 856 (N.D. Tex. 2013). In *Garcia*, the defendant challenged a traffic stop that took place north of Waco, Texas. *Id.* at 859. The officer did not see the defendant enter the highway or drive past the "left lane for passing only" sign. *Id.* at 864. The nearest sign was five miles behind the site of the stop, and there were three on-ramps along that five-mile stretch. *Id.* The court concluded that "the existence of entrances onto the highway between a traffic sign and the location of the stop *undermines any inference* that the motorist passed the sign, unless of course the officer knew that all three on-ramps were closed or temporarily blocked." *Id.* (emphasis added).[4] Reasoning from *Garcia*, Castillo contends that Collins

---

[3] The Court of Appeals did no reasonable-suspicion analysis in this pre-*Abney* decision, focusing instead on upholding this provision of the traffic code against a vagueness challenge. *See Baker*, 50 S.W.3d at 145–46. Nevertheless, this decision was cited approvingly by the Texas Court of Criminal Appeals in *Abney*, 394 S.W.3d at 549 ("These facts were specific and provided . . . reasonable suspicion . . . .").

[4] The court also noted that the officer did not allow enough time to elapse between observing the defendant's driving and pulling him over: the officer decided to make a stop within twenty-five seconds of seeing the defendant's truck and running its plates. *Garcia*,

could not have had reasonable suspicion to stop his vehicle because there were several on- and off-ramps between the sign and the site of the stop.

We are not persuaded by *Garcia*'s suggestion that an officer must have *specific* knowledge that the suspect passed the sign. *See* 976 F. Supp. 2d at 864 (concluding the officer lacked reasonable suspicion because he "had absolutely no way of knowing when [the defendant] entered the highway"). To conclude that an officer does not have reasonable suspicion unless he knows the defendant passed the sign is essentially to require *certainty* that a violation occurred. This would raise the standard for reasonable suspicion far above probable cause or even a preponderance of the evidence, in contravention of the Supreme Court's instructions. *See Naverette*, 134 S. Ct. at 1687 ("[T]he level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." (internal quotation marks omitted)).

Rather, we follow *Abney, Mouton*, and *Baker* and conclude that a court must "determine, based on the statute, whether [a] sign is applicable *on the facts of each case*," *Abney*, 394 S.W.3d at 549–50 (emphasis added). Here, Collins first observed Castillo 5.3 miles from the closest sign—far short of *Abney*'s fifteen-to-twenty miles and between *Baker*'s six and *Mouton*'s four. Collins observed Castillo for several minutes, like in *Baker*, and allowed an opportunity for Castillo to change lanes, like in *Mouton* and unlike in *Garcia*. Finally, unlike in *Abney*, Castillo advanced no credible alternative reason for driving in the left lane. All three cases support the conclusion that Collins had reason to suspect Castillo was committing a traffic infraction.

---

976 F. Supp. 2d at 865. The officer observed the defendant for one mile, and the defendant was in the process of passing a large truck when the officer pulled him over. *Id.* at 860.

No. 14-41425

Castillo argues that, except for Collins's testimony and the dashboard-camera video, the Government introduced no evidence about "(1) the traffic patterns on U.S. Highway 59 in general, on the stretch of highway at issue here, or on the several country roads that access the stretch of highway between the posted sign and where the trooper observed the vehicle" or "(2) how many vehicles used the several turnarounds and at least one true exit ramp on that stretch of highway." As Castillo points out, the Government "did not elicit testimony or present other evidence about the population of the area, or how many ranches, homes, or businesses, for example, are located in the area." Finally, even at 12:30 a.m., Castillo notes, Collins had to weave in and out of traffic to get to the Explorer.

However, courts are instructed to defer to "resident judges and local law enforcement" in their assessment of the relevant facts. *Ornelas,* 517 U.S. at 699. Here, the relevant facts include the typical traffic flow on Highway 59 and the likelihood that a car on that stretch of road would have been traveling a long distance rather than a short one. Castillo has not shown clear error in the district court's factual conclusion that the percentage of  "vehicles driving on US 59 at the exact point where Collins first observed the Explorer [that] had passed the sign located 5.3 miles behind them" is "over 50% and likely much higher." The court based this determination on the dashboard-camera video of the night in question, which shows only a handful of trucks and cars on the road prior to the stop. It also relied on Collins's testimony that he observed the Explorer for several minutes and offered the Explorer the opportunity to change lanes. Finally, the court rested on its own observation that, although "Highway 59 is a major highway linking the border town of Laredo to Houston," "[t]his 5.3 mile stretch of US 59 does not pass through heavily populated areas, unlike the parts of US 59 that are in Houston." The dashboard video, "combined with [Collins's] testimony at the suppression hearing, show[s] that

8

No. 14-41425

there are few heavily travelled routes that enter US 59 after the 'Passing Only' sign and before Collins first observed the Explorer."

Reasonable suspicion is a low threshold, requiring that an official have "'some minimal level of objective justification' for making the stop." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *INS v. Delgado*, 446 U.S. 210, 217 (1984)). The court's conclusion that it was more likely than not that Castillo's car passed the sign takes into account the totality of the circumstances and evaluates the Government's justification for specific, articulable facts. *See Hill*, 752 F.3d at 1033. The court's "finding of historical fact" is not clearly erroneous, *see Ornelas*, 517 U.S. at 699, and therefore we grant it deference. On these facts, we conclude that Collins had reasonable suspicion to stop Castillo.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Castillo's motion to suppress.

No. 14-41425

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

I respectfully dissent. Both the majority opinion and the district court permit a finding of reasonable suspicion for the traffic stop at issue where the officer had no particularized evidence that a traffic violation had occurred. Indeed, both opinions rely on the district court's *sua sponte* probability calculation and independent speculation about the road in question. Because this is not a proper basis for the decision and the record reflects no other proper basis, I would reverse the district court's denial of Castillo's motion to suppress.

**I.**

At around 12:30 a.m. on November 11, 2013, Officer Collins stopped Castillo for driving in the left lane on Highway 59. It is undisputed that Castillo was driving in the left lane of Highway 59. Under Texas law, it is illegal to drive in the left lane if a traffic sign so indicates. *See* Tex. Transp. Code § 544.004. Therefore, the sole issue here is whether Collins had a reasonable suspicion that Castillo drove past a "left lane for passing only" sign before Collins stopped Castillo.

Collins spotted Castillo's vehicle as it was driving northbound along Highway 59. When Collins first saw the vehicle, Collins was parked at a gas station about 5.3 miles north of the nearest "left lane for passing only" sign. The record reflects that in that 5.3-mile stretch between the sign and the gas station, two on-ramps from major highways, as well as several county roads, intersected Highway 59. When Collins spotted Castillo, he had not seen where Castillo first entered Highway 59, or seen Castillo pass a "left lane for passing only" sign. Collins decided to follow Castillo. After following Castillo for about six miles and continuing to observe Castillo drive in the left lane, Collins stopped Castillo for the suspected traffic violation of driving in the left lane

No. 14-41425

without passing. It is undisputed that during the time that Collins followed Castillo, they did not pass a "left lane for passing only" sign.

During the stop, Collins saw three people huddled on the floorboard between the back seat and the front seat. These individuals did not have documentation establishing the lawfulness of their presence in the United States, and United States Border Patrol agents determined that they were illegal aliens. All of the vehicle's occupants, including Castillo, were placed under arrest. During the stop and following his arrest, Castillo gave statements to law enforcement regarding the incident.

After his indictment, Castillo moved to suppress all of the evidence obtained during the traffic stop, including his statements to law enforcement and Collins's discovery of the illegal alien passengers. The district court held a hearing on the motion, at which Collins served as the sole witness. Collins testified regarding the basic details of the stop, including the distance from the "left lane for passing only" sign and the location at which he first observed Castillo, and the distance over which he followed Castillo before pulling him over. Collins testified that he stopped Castillo on suspicion that Castillo was violating a "left lane for passing only" sign. However, on cross-examination, Collins admitted that various tributary roads and an on-ramp intersect the relevant portion of Highway 59, and he offered no particular reason why he suspected that Castillo had passed the sign rather than entering the highway via one of the intersecting tributary roads. Collins specifically conceded that "[i]t could be just as likely that [Castillo] could have pulled out from one of these roads that feeds into 59 anywhere after that sign on mile zero."

The government played a video recording of the stop, which began well after Collins began following Castillo and did not depict any of the 5.3-mile stretch of the highway between the sign and the location where Collins first saw Castillo, or even much of the six-mile stretch over which Collins followed

11

No. 14-41425

Castillo.  The government also played a second video that Collins recorded a couple of days later around 7:30 a.m., when he "went back and remeasured the distances."  The second video revealed that two on-ramps and several county roads intersect Highway 59 in the 5.3-mile stretch between the "left lane for passing only" sign and the location at which Collins first observed Castillo.

Following the hearing, the district court denied Castillo's motion to suppress, determining that because there was "over [a] 50%" chance that Castillo had passed the "left lane for passing only" traffic sign, Collins had a reasonable suspicion that Castillo had violated Texas traffic laws.  *United States v. Castillo*, 28 F. Supp. 3d 673, 676 (S.D. Tex. 2014).  However, at the hearing, there was no testimony regarding this 50% figure or any other probability figure, and Collins had not articulated any specific reason why he thought Castillo had driven past the "left lane for passing only" sign instead of entering the highway through one of the on-ramps north of the sign.  Also, there was no evidence in the record regarding traffic patterns in the area.  In order to make its "probabilistic estimation" that Castillo was already traveling along Highway 59 south of the sign, *id.* at 677, the district court relied entirely on its own views of the local traffic patterns.  *See id.* at 675–77.

## II.

"For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez–Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).  To have reasonable suspicion, an officer must have "a particularized and objective basis for suspecting [that] the *particular person* stopped" was engaging in unlawful activity.  *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (emphasis added) (internal quotation marks omitted); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002).  An officer's mere hunch is not enough.  *Navarette*,

12

No. 14-41425

134 S. Ct. at 1687 (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).  Courts must look at the totality of the circumstances when determining whether there was reasonable suspicion.  *Navarette*, 134 S. Ct. 1687.

As we have emphasized, an officer must have "an *individualized* suspicion" that "relate[s] to the individual arrestee, not a category of offenders."  *Kelly v. Foti*, 77 F.3d 819, 822 (5th Cir. 1996) (internal quotation marks omitted); *see also id.* (holding that a strip search was not justified by "a generalized fear" that arrestees who do not carry photo identification and who do not quickly post bond are carrying contraband into the jail); *United States v. Bonds*, 268 F.3d 306, 306–07 (5th Cir. 2001) (holding that the government failed to establish reasonable suspicion when it relied on past "complaints about people congregating in the area around a building . . . and drinking or perhaps dealing in drugs"); *United States v. Hill*, 752 F.3d 1029, 1035 (5th Cir. 2014) (explaining that "some evidence of a rise in crime" at a particular apartment complex, while relevant, is too "vague and generalized" to "support a reasonable suspicion that anybody found there is involved with drugs").  Yet, as Collins himself admitted at the hearing, Collins had no particularized reason to suspect that Castillo had violated the law.  The only information that Collins might have relied upon to suspect that Castillo was already traveling on Highway 59 south of the sign was generalized traffic patterns— nonparticularized information that would equally apply to *anyone* driving in the left lane along the same stretch of road—and in any event, at the hearing, Collins did not testify at all about traffic patterns.

Under the majority opinion's analysis, an officer need not articulate any particularized facts regarding where a driver entered the highway or how long he had been on the highway; he need only point to general patterns in the behavior of other drivers (and perhaps he need not even do that—Collins never actually testified about any such patterns).  In other words, the majority

13

opinion allows officers to ground their suspicion on general information about a location or class of people and make probabilistic inferences about an individual based on that general information.  This is akin to holding that an officer has reasonable suspicion to stop a person just for walking through a high-crime area where drug deals are known to frequently occur.  However, as we have recognized, the Supreme Court has held that such a scenario provides no reasonable suspicion.  *See United States v. Tuggle*, 284 F. App'x 218, 224 (5th Cir. 2008) ("[M]ere presence in a high crime area, without more, will not create reasonable suspicion for a *Terry* stop and frisk." (citing *Brown v. Texas*, 443 U.S. 47, 52 (1979)).  Moreover, it is no response to say that Collins saw Castillo driving in the left lane without passing.  In Texas, such behavior is not a traffic violation if the driver has no notice from a "left lane for passing only" sign.  Collins articulated no particularized reason to suspect that Castillo had passed such a sign.  In fact, Collins recognized that several tributary roads intersected Highway 59 in the 5.3 miles between the sign and the location where Collins first saw Castillo.

The Texas cases cited in the majority opinion do not support its decision.  Under Texas law, driving in the left lane is a violation only when a "left lane for passing only" traffic sign is within a "reasonable distance" of where an officer first sees the driver.  *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013).  In *Abney*, the Texas Court of Criminal Appeals addressed a scenario nearly identical to the one here, except that the traffic sign was located between 15 and 20 miles from the location where the officer first observed the defendant.  The court held that this distance was too far to satisfy the requirement in Tex. Transp. Code § 544.004 that the traffic sign be "at or near" the location of the alleged violation.  *Id.* at 549.  Critically, in reversing the denial of a motion to suppress, the court noted that the record indicated that the officer "did not know at what point Appellant entered the highway."

14

*Id.* It explained that to affirm the denial of the defendant's motion to suppress would allow officers to stop "anyone driving in the left lane without passing other vehicles . . . if there is a 'left lane for passing only' sign located anywhere on the highway, even if there is no evidence that the driver has passed such a sign." *Id.* In concluding its opinion, the Court of Criminal Appeals further noted that whether an officer observes a driver pass the sign and whether there are entrances onto the highway between the sign and the stop are "factors to consider when evaluating the totality of the circumstances." *Id.* at 550.

In *Mouton*, a driver was stopped about three to four miles past the closest "left lane for passing only" sign. *Mouton v. State*, 101 S.W.3d 686, 690 (Tex. App.—Texarkana 2003, no pet.). The officer had testified that he followed Mouton for one mile before stopping him, which, in effect, meant that Mouton was between two and three miles from the sign when the officer first spotted him. *Id.* Although the appellate court held that the stop occurred close enough to the sign to support a reasonable suspicion that the driver had passed the sign, the court did not address whether any on-ramps or other entrances intersected the road between the location of the sign and the location where the officer first saw Mouton.

In *Baker*, the Court of Appeals of Texas addressed whether the phrase "left lane for passing only" was unconstitutionally vague, not how close a sign containing this language must be to the location of the alleged violation. *Baker v. State*, 50 S.W.3d 143, 145–46 (Tex. App.—Eastland 2001, pet. ref'd). Although the court held that an officer had made a valid traffic stop when he stopped a driver six miles from the nearest sign, it did not address the underlying reasons that the officer suspected that the driver saw the sign.

Finally, unlike the majority opinion, I am persuaded by the analysis in *United States v. Garcia*, 976 F. Supp. 2d 856 (N.D. Tex. 2013). In *Garcia*, a federal district court granted a defendant's motion to suppress evidence found

during a traffic stop in circumstances nearly identical to the case at hand. The officer in *Garcia* first spotted the defendant five miles from the nearest "left lane for passing only" sign, and the officer did not see the defendant pass the sign or the point at which he entered the highway. *Id.* at 861, 864. There were three on-ramps to the highway between the sign and the point at which the officer first spotted the vehicle. *Id.* at 864. In light of these facts, the district court concluded that "it was unreasonable for [the officer] to suspect that [the defendant] had passed a sign" because he "had absolutely no way of knowing when [the defendant] entered the highway." *Id.* So too here. In the 5.3 miles between the "left lane for passing only" sign and the location at which Collins observed Castillo, on-ramps and county roads intersected Highway 59, and Collins offered no particularized reason why he suspected that Castillo had entered Highway 59 south of the sign.

The majority opinion asserts that the approach in *Garcia*, in essence, turns the reasonable-suspicion standard into one of "certainty." I disagree. The problem for the government in *Garcia*, as well as in this case, was that the officer offered no particularized reason why he suspected that the defendant had driven past the "left lane for passing only" sign, not that the officer was simply uncertain whether a violation had occurred. Where a stretch of highway is intersected by on-ramps and tributary roads, it may indeed be difficult for an officer to articulate particular facts supporting his suspicion of a violation, but this difficulty is no reason for us to jettison the well-established requirement that officers base their traffic stops on reasonable suspicion supported by particularized facts. The majority opinion, sensing the difficulty that officers will have in articulating such particularized facts in these circumstances, dispenses with the particularity requirement altogether. In my view, binding precedent precludes us from giving the government such a carve-out.

**III.**

Moreover, even if premising reasonable suspicion on generalized traffic patterns were appropriate, the record is devoid of any evidence substantiating the district court's "probabilistic estimation." There is no expert testimony or expert report detailing the traffic patterns along this particular stretch of Highway 59. There is no lay testimony from Collins or anyone else regarding his own observations of the traffic patterns in the area. On the record before it, all the district court knew was that Castillo was spotted 5.3 miles north of the sign, and that it was merely *possible* that Castillo was already driving along Highway 59 south of the sign. In fact, on cross-examination, Collins conceded that "[i]t could be just as likely that [Castillo] could have pulled out from one of these roads that feeds into 59 anywhere after that sign on mile zero." Collins' testimony did not support the district court's conclusion.

Yet, the district court made its own determination that it was more likely than not that Castillo entered Highway 59 at some point south of the sign. *Castillo*, 28 F. Supp. 3d at 676. It based this determination on its review of Collins's dashboard camera recordings, one of which does not depict the relevant 5.3-mile stretch of road, and the other of which was recorded at a date and time different from the date and time of the stop. According to the district court, these videos showed that the intersecting roads between the sign and where Castillo was first spotted "[were] not a heavy source of traffic." *Id.* The district court continued, stating that this stretch of Highway 59 "does not pass through heavily populated areas" and that few of the intersecting routes were "heavily travelled." *Id.*

There are several problems with these findings by the district court. The videos only briefly showed each intersecting road as Collins drove past. Just as the videos could have been an accurate representation of traffic patterns when Castillo was stopped, they could have also captured a momentary period

of light traffic along roads that were otherwise quite busy.[1]  For this reason, without any explanatory testimony, the videos have no probative value with respect to traffic patterns.  Indeed, the record contains no testimony regarding the most likely sources of traffic along this stretch of Highway 59 or the population in nearby towns and neighborhoods connected to Highway 59 via the intersecting roads.  Furthermore, the second video was recorded on a different date and time, and the record reveals no reason to believe that traffic patterns would be the same at that time as they were during the stop. Moreover, during the videos, traffic can be seen entering Highway 59.[2]

The district court did not explain the basis for its 50% probability finding, and no basis is apparent from this sparse record, which contains no testimony or evidence regarding traffic patterns or probabilities.  Ultimately, the district court relied on its own judgment about what it thought the traffic patterns were like in southern Texas.  *See* Fed. R. Evid. 201.[3]  Therefore, even assuming *arguendo* that generalized traffic patterns, standing alone, could

---

[1] The majority opinion's characterization of the video footage in this record is not completely accurate.  Rather than showing "few heavily travelled routes," the video shows an on-ramp for State Highway 185, which runs between Victoria and Bloomington, and surrounding the intersection between Highways 59 and 185 are several businesses, including restaurants and hotels.  Even as the dashboard camera passed the intersection, a viewer can see vehicles entering Highway 59 via the ramp.

[2] We are just as well-positioned as the district court to view the videos.  *See Scott v. Harris*, 550 U.S. 372, 381 (2007) (directing a court of appeals, at the summary judgment stage, to "view[] the facts in the light depicted by the videotape," rather than the light most favorable to the non-movant).

[3] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Moreover, if a court takes judicial notice of an adjudicative fact, "a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed."  It is unclear from this record whether any party had an opportunity to address whether it was appropriate to take judicial notice of the traffic patterns along Highway 59.

No. 14-41425

properly form the basis for reasonable suspicion, I would reverse due to the lack of support in the record for the district court's probability finding.

## IV.

As the majority opinion observes, the Supreme Court has held that the standard for reasonable suspicion "is considerably less than proof of wrongdoing by a preponderance of the evidence." *Navarette*, 134 S. Ct. at 1687 (internal quotation marks omitted). Whatever this minimal probability is, however, it must be established through the officer's articulation of facts particular to the individual defendant stopped. Because the majority opinion allows for reasonable suspicion in the absence of such particularized facts and relies on the district court's *sua sponte* probability determination and independent speculation about the road in question, I respectfully dissent.