**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00274-CR**
_____

**DALE EVRET UMPHREY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Jefferson County, Texas**
**Trial Cause No. 316824**

**MEMORANDUM OPINION**

Dale Evret Umphrey appeals his conviction for driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West Supp. 2018). In one issue, Umphrey argues the trial court erred when it denied his motion to suppress a warrantless search by a state trooper who detained Umphrey. Umphrey contends the trooper's stop violated Texas

1

Code of Criminal Procedure article 38.23 and amendments IV and XIV to the United States Constitution.[1] We affirm the trial court's judgment.[2]

**Background**

Texas State Trooper Ousman testified as the sole witness during the motion to suppress hearing. Trooper Ousman testified that on the evening in question, while on patrol and stopped at a stop sign, she observed Umphrey "belligerently yelling" at a female passenger in his vehicle and that "[h]e flailed [an] arm." Although Trooper Ousman could not hear him, she observed Umphrey "actually facing [the passenger] and yelling at her." The trooper drove her patrol car through the intersection and made a u-turn to get behind him. The trooper then activated her emergency lights to initiate a traffic stop. Umphrey drove through the intersection and into a gas station parking lot. The female passenger had exited the car just before the trooper initiated the traffic stop and was standing on a sidewalk and was crying.

---

[1] Amendment IV protects citizens against unlawful searches and seizures, while amendment XIV affords due process of law. *See* U.S. CONST. amends. IV, XIV. Texas Code of Criminal Procedure article 38.23 precludes the admission of any unlawfully obtained evidence at trial. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2018).

[2] Following the trial court's denial of his motion to suppress, Umphrey pleaded no contest to the charge. The trial court found Umphrey guilty and sentenced him to ninety days in the Jefferson County Jail and imposed a $1,000.00 fine, probated over a one-year period. The trial court's certification of Umphrey's right to appeal explained this case involved a plea bargain, but Umphrey retained the right to appeal matters raised by written motion and ruled on before trial.

Once Umphrey stopped his vehicle, the trooper waved the passenger over to speak with her.

The trooper testified that she was investigating a crime, as she "absolutely" thought Umphrey might have assaulted the passenger. The trooper said she "was concerned that he was physically abusing his female passenger[,]" or the assault had already happened or was about to happen. The trooper explained that she had to speak with the suspect and the victim to determine if criminal activity was afoot. She testified she decided to stop Umphrey because she "had a genuine concern" about the potential victim and the situation. Trooper Ousman indicated she stopped the defendant to both check on the potential victim and address the situation.

Trooper Ousman testified that as she exited her vehicle and approached Umphrey, he flung his door open and began to approach her patrol car, so she directed him back to his vehicle. The trooper described Umphrey's "whole demeanor" when getting out of the vehicle as "threatening." Meanwhile, the passenger walked to the gas station.[3]

The trooper testified she did not observe Umphrey commit any traffic violations, but she believed she was "checking the welfare" and engaged in

---

[3] The trooper later checked on the female passenger's welfare by asking if everything was okay and again noted the woman was crying with makeup running down her face. This occurred after the trooper made the initial stop.

"[c]ommunity caretaking." The trooper testified that when she made contact with Umphrey, she immediately noticed a strong odor of alcohol and that he had red, glassy eyes. According to her affidavit, she performed standardized field sobriety tests which indicated intoxication. She placed Umphrey in custody and obtained a warrant for a blood draw.

Umphrey argued at the hearing that this stop could not be justified by the community caretaking function. The State countered that the trooper was concerned about a potential assault after she witnessed a heated exchange between the driver and the female passenger, followed by the passenger crying on the side of the road. The State argued that the trooper had reasonable suspicion "a crime may have occurred or may actually have been occurring."

The trial court issued findings of fact and conclusions of law. The trial court concluded that Trooper Ousman was not justified in stopping Umphrey under the community caretaking function, but the court concluded the trooper had reasonable suspicion to justify the investigative stop based on the totality of the circumstances. The trial court reasoned "Trooper Ousman had an objective basis for suspecting that [Umphrey] had been, was, or was about to be, engaged in criminal activity[,]"

4

namely assault.[4] The trial court outlined the specific, articulable facts Trooper Ousman presented that led to her suspicion.

## Standard of Review

We employ a bifurcated standard of review when examining a trial court's ruling on a motion to suppress. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Under that standard, we "give 'almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.'" *Amador*, 221 S.W.3d at 673 (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). Likewise, if the trial court resolves a motion to suppress based on mixed questions of law and fact, its evaluation of the credibility and demeanor of the witnesses is given almost total deference. *Id.* (citing *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)). If the trial court's findings do not depend on the trial court's evaluations of the credibility and demeanor of the witnesses or turn on

---

[4] On appeal, the State concedes Ousman's community caretaking function is not applicable and instead argues that the trooper had reasonable suspicion to detain Umphrey based on the circumstances.

resolving a question of law, we review its ruling using a *de novo* standard. *Id.* (citing *Montanez*, 195 S.W.3d at 107); *Guzman*, 955 S.W.2d at 89 (citation omitted).

Questions of law, such as a trial court's determination of reasonable suspicion, to justify detention under the Fourth Amendment, are subject to *de novo* review. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When, as here, the trial court makes findings of fact, "we determine whether the evidence, when viewed in the light most favorable to the court's ruling, supports those findings." *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013) (citing *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006)).

**Analysis**

Umphrey focuses almost entirely on the community caretaking function in his brief, which the trial court concluded did not apply and the State concedes is inapplicable in this situation.[5] The trial court denied the motion to suppress on the basis that the officer had reasonable suspicion for the investigative stop due to the trooper's concern the driver may have assaulted his female passenger.

---

[5] Umphrey focuses on the fact that one of Ousman's stated motives was "community caretaking," but the Texas Court of Criminal Appeals has explained that "[b]ecause reasonable suspicion is an objective determination," an officer's "motives for conducting the stop were irrelevant to the validity of the stop." *See Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

To satisfy the Fourth Amendment, a warrantless detention of a person amounting to less than a full-blown custodial arrest must be justified by reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Ford*, 158 S.W.3d at 492); *see also Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Carmouche*, 10 S.W.3d at 328. The State does not dispute that Trooper Ousman's initial detention of Umphrey was warrantless. Therefore, we must determine if the State met its burden in the motion to suppress hearing to establish reasonable suspicion justifying the stop. *See Ford*, 158 S.W.3d at 492 (citations omitted) (explaining that once the defendant shows police detained him without a warrant, burden shifts to the State to establish reasonable suspicion for the detention).

An officer's temporary detention is lawful if she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). Reasonable suspicion "exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead [her] to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford*, 158 S.W.3d at 492 (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). This is an objective standard which disregards the subjective intent of the detaining officer and looks solely to

7

whether there is an objective basis for the stop. *Id.* (citing *Garcia*, 43 S.W.3d at 530); *see also Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014) (citations omitted). "A reasonable-suspicion determination is made by considering the totality of the circumstances." *Ford*, 158 S.W.3d at 492–93. Articulable facts must be more than a mere hunch or suspicion. *Abney*, 394 S.W.3d at 548. This does not require the State to prove a crime occurred with absolute certainty, rather it "has to carry its burden of proving that, under the totality of the circumstances, the seizure was reasonable." *Id.*

Here, we must determine whether the officer had reasonable suspicion that Umphrey committed assault when she conducted the investigative stop. The Texas Penal Code provides a person commits an assault if the person:

> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including person's spouse;
> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Tex. Penal Code Ann. § 22.01 (West 2019). The trooper averred in her affidavit and testified in the hearing on the motion to suppress that prior to activating her lights, she personally observed the driver "belligerently yelling" at his female passenger, "flailing his arm," and "at one point actually facing her and yelling at her." Trooper

8

Ousman also testified during the hearing that she had experience dealing with domestic violence calls and explained officers "have a duty" in those situations. The trooper did not observe the driver hit the female passenger, but she testified she was investigating "[a] possible crime" and was concerned the passenger may have already been assaulted or was being assaulted. The trooper indicated that in this situation, she could not have ensured the passenger's safety without intervening.

Umphrey focuses on the fact that Trooper Ousman never saw him hit the passenger and that once the passenger exited the vehicle, she was no longer in any threat of being hit. An assault does not require that a victim be hit; an assault can be committed by "intentionally, knowingly, or recklessly" causing "bodily injury to another," or by "intentionally or knowingly threaten[ing] another with imminent bodily injury, including the person's spouse[.]" *See* Tex. Penal Code Ann. § 22.01. Given these facts, an officer could reasonably conclude that an assault had already occurred or may be in progress. Moreover, the State does not have to prove a crime occurred, rather it has to establish the detention and seizure were reasonable, which it did here. *See Abney*, 394 S.W.3d at 548. The fact that the passenger was no longer in imminent danger once she exited the vehicle is immaterial to whether the driver may have already assaulted her.

9

Trooper Ousman testified to specific, articulable facts supporting her belief a crime may have occurred or may have been in progress. Particularly, she identified Umphrey in the vehicle "belligerently yelling" at his female passenger while "facing her" and that he was "flailing his arm" at her leading Trooper Ousman to become concerned about a potential assault which led her to initiate the stop. Based on the totality of the circumstances and taking into consideration the trooper's experience and training, along with reasonable inferences from the articulated facts, we conclude the trooper could have reasonably formed reasonable suspicion to conduct an investigative stop of Umphrey's vehicle. *See Ford*, 158 S.W.3d at 492–93; *see also U.S. v. Cortez*, 449 U.S. 411, 419 (1981) (explaining that an officer's training may factor into a reasonable-suspicion analysis). This reasonable suspicion justified the warrantless investigative stop. *See Crain*, 315 S.W.3d at 52. We overrule Umphrey's sole issue.

## Conclusion

The trial court properly denied Umphrey's motion to suppress, and we affirm its judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on September 16, 2019
Opinion Delivered September 25, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.