**Opinion filed June 26, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00133-CR

_____

## MARK GEORGE ENRIQUEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 39th District Court**
**Throckmorton County, Texas**
**Trial Court Cause No. 1356**

### M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Mark George Enriquez, of possession of a controlled substance, methamphetamine, in an amount of less than one gram. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (b) (West Supp. 2024). The jury assessed his punishment at confinement in a state jail facility for a period of two years and a $5,000 fine. In two issues, Appellant argues that the trial court erred in

denying his motion to suppress evidence and by overruling his Rule 403 objection to other items seized from the vehicle that Appellant was driving. We affirm.

*Background Facts*

On March 25, 2022, Deputy Jordan Roebuck with the Throckmorton County Sheriff's Office was working patrol. Deputy Roebuck received a call on his personal cell phone from the dispatcher who was on her way to work. The dispatcher reported that there was a vehicle driving erratically and following her too closely. Deputy Roebuck responded to the location given by the dispatcher and observed the dispatcher's vehicle as well as the vehicle she described following her. Using his radar, Deputy Roebuck determined that the vehicles were traveling at a speed of seventy-three miles per hour. The vehicle was only "half of a car length" behind the dispatcher's vehicle, and Deputy Roebuck testified that that was not a safe distance based upon the speed of both vehicles. Deputy Roebuck initiated a traffic stop for the violation of following too closely behind a vehicle. *See* TEX. TRANSP. CODE ANN. § 545.062(a) (West 2022).

As he approached, Deputy Roebuck smelled a strong odor of marihuana coming from the vehicle. He made contact with Appellant, who was acting nervous. Appellant was the only occupant of the vehicle. Deputy Roebuck asked if Appellant had any illegal drugs. Appellant initially denied having any but later admitted that he had marihuana in the center console of the vehicle. Deputy Roebuck called for assistance from Sheriff Doc Wigington and his K-9 and then began a search of Appellant's vehicle.

Deputy Roebuck found marihuana in the center console as well as a wallet containing a security officer badge that had a different name on it. Appellant said that the badge belonged to his roommate. Deputy Roebuck also found a clear plastic bottle that contained a yellow liquid and had a temperature-gauge sticker attached to it. Appellant said the plastic bottle contained "fetish urine." Deputy Roebuck stated

that there was a metal box in the front passenger floorboard of the vehicle. The metal box was locked, but it was not sealed, so Deputy Roebuck was able to see inside of it.[1] Deputy Roebuck described that he could see plastic baggies inside of the metal box and that a crystal substance, that he believed to be methamphetamine, was falling out of the box. Sheriff Wigington removed the box away from the odor of the vehicle and allowed his K-9 to walk around the box. The K-9 alerted to the box three separate times.

Deputy Roebuck and Sheriff Wigington pried the box open with a screwdriver. Inside of the box, officers found a methamphetamine pipe containing what was believed to be a usable amount of methamphetamine, several different types of pills, and another individual's identification. Testing at the Texas Department of Public Safety Crime Laboratory confirmed that the methamphetamine pipe contained 0.52 grams of methamphetamine.

Matthew Enriquez, Appellant's brother, testified that he owns a "backyard living business" and that Appellant is a foreman of the business. Matthew said that the vehicle Appellant was driving on the night of the offense was used by various employees of the business.

<em>Analysis</em>

*Motion to Suppress*

Appellant filed a motion to suppress all tangible evidence seized at the time of the stop, including the controlled substance. After a hearing, the trial court denied Appellant's motion. In his first issue, Appellant argues that the trial court erred by denying his motion to suppress. He argues that the traffic stop was pretextual in nature and that the search was not based upon probable cause.

---

[1]Sheriff Wigington testified that the metal box "did not have a good seal" and that one could see inside of the box when turning it on its side.

"We review a trial court's ruling on a motion to suppress under a bifurcated standard." *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020). "We afford almost total deference to a trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor if they are reasonably supported by the record." *Id.* "We review *de novo* a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor." *Id.* "The trial court's ruling will be sustained if it is correct on any applicable theory of law and the record reasonably supports it." *Id.* When the record is silent as to the reasons for the trial court's ruling, we infer the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

"An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). "Reasonable suspicion exists if the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Id.* (quoting *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013)). The likelihood of criminal activity required for reasonable suspicion need not rise to the level required for probable cause. *State v. Kerwick*, 393 S.W.3d 270, 273–74 (Tex. Crim. App. 2013). The reasonable-suspicion standard requires only "some minimal level of objective justification" for the stop. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)). This is an objective inquiry that disregards the subjective intent of the officer and looks, instead, to whether an

objectively justifiable basis for the detention existed. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).

Appellant first argues that the initial traffic stop was pretextual in nature. The Texas Transportation Code provides that:

> An operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.

TRANSP. § 545.062(a). Deputy Roebuck testified that he observed Appellant commit a traffic violation by following the dispatcher's vehicle too closely—a violation of Section 545.062. *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). "It is well settled that a traffic violation committed in an officer's presence authorizes an initial stop." *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982). The subjective intent of the officer conducting the stop is irrelevant. *State v. Clark*, 315 S.W.3d 561, 564 (Tex. App.—Eastland 2010, no pet.). Thus, Deputy Roebuck conducted a valid traffic stop when he observed Appellant commit a traffic violation.

Appellant next argues that Deputy Roebuck did not have probable cause to search the vehicle. Under the Fourth Amendment, all searches conducted without a warrant are per se unreasonable unless an exception to the warrant requirement applies. *Marcopoulos v. State*, 538 S.W.3d 596, 599 (Tex. Crim. App. 2017) (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009); *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003)). One exception to the warrant requirement is the automobile exception. *Id.* The automobile exception allows police officers to conduct a warrantless search of an automobile if the vehicle is readily mobile and the officer has probable cause to believe that the vehicle contains contraband. *Id.* (citing *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009)). The

automobile exception to the requirement of a search warrant does not require exigent circumstances. *Neal v. State*, 256 S.W.3d 264, 283 (Tex. Crim. App. 2008).

Probable cause to support a warrantless search of an automobile exists when "the facts and circumstances known to law enforcement officers are 'sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Id.* at 599–600 (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949)); *see also Ornelas v. United States*, 517 U.S. 690, 696 (1996) (holding that probable cause to conduct a warrantless search exists if, when viewing the historical facts, an objectively reasonable police officer would conclude that probable cause exists). Probable cause exists when there is "a 'fair probability' of finding inculpatory evidence at the location being searched." *Marcopoulos*, 538 S.W.3d at 600 (citing *Neal*, 256 S.W.3d at 282). When analyzing the probability of finding inculpatory evidence, a reviewing court should consider "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (quoting *Brinegar*, 338 U.S. at 175). Additionally, we must consider the "totality of the circumstances known to the officer." *Id.* The scope of a warrantless search that is based on probable cause is just as broad as a search authorized by a properly obtained warrant. *See United States v. Ross*, 456 U.S. 798, 823 (1982).

Deputy Roebuck testified that he smelled a very strong odor of marihuana as he approached Appellant's vehicle, and that he did not "have to make it to [the vehicle's] window before [he] could detect it." Appellant acknowledges that the smell and odor of marihuana has been held sufficient to search a vehicle, but he argues that there must be more than the odor of marihuana when making the initial probable cause determination. Courts have long held that the odor of marihuana alone is sufficient to constitute probable cause to search a defendant's person, vehicle, and objects within the vehicle. *See, e.g., Moulden v. State*, 576 S.W.2d 817,

6

819–20 (Tex. Crim. App. [Panel Op.] 1978); *Deleon v. State*, 530 S.W.3d 207, 211 (Tex. App.—Eastland 2017, pet. ref'd). Thus, there was probable cause to initiate the search of Appellant's vehicle.

Appellant next argues that Deputy Roebuck should not have continued the search to include the locked metal box without a warrant. An officer may conduct a warrantless search of all containers within a vehicle as long as the officer has probable cause that the container conceals the object of the search. *See Neal*, 256 S.W.3d at 282 (citing *Ross*, 456 U.S. at 825). This rule applies regardless of who the owner of the container is. *See Guajardo v. State*, No. 13-19-00424-CR, 2020 WL 7063685, at *3 (Tex. App.—Corpus Christi–Edinburg Dec. 3, 2020, no pet.) (mem. op., not designated for publication) (citing *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999)).

Deputy Roebuck smelled marihuana coming from the vehicle. Deputy Roebuck began a search of the vehicle and found the metal box in the front passenger floorboard. He could see plastic baggies inside of the box as well as a crystal-like substance that he suspected was methamphetamine. Based upon the smell of marihuana, Deputy Roebuck had probable cause to search the vehicle and every part of the vehicle that could conceal marihuana, including the metal box. *See Levine v. State*, 794 S.W.2d 451, 454 (Tex. App.—Amarillo 1990, pet. ref'd). Additionally, Sheriff Wigington's K-9 alerted on the metal box on three occasions after it was removed from the vehicle. Sheriff Wigington testified that his K-9 was trained and certified on the detection of illegal narcotics, including marihuana and methamphetamine. "The law is well established that as soon as a drug-detection dog alerts on a car, officers have probable cause to search the car without a warrant." *Branch v. State*, 335 S.W.3d 893, 901 (Tex. App.—Austin 2011, pet. ref'd) (citing *Parker v. State*, 182 S.W.3d 923, 924 (Tex. Crim. App. 2006); *Haas v. State*, 172 S.W.3d 42, 54 (Tex .App.—Waco 2005, pet. ref'd); *Harrison v. State*, 7 S.W.3d 309,

311 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd)).  Thus, the officers had multiple bases for probable cause to search the contents of the metal box.

In summary, Deputy Roebuck initiated a valid traffic stop when he observed Appellant following a vehicle too closely.  Based upon the smell of marihuana, Deputy Roebuck had probable cause to search the vehicle including any containers that could conceal marihuana.  Thereafter, Deputy Roebuck and Sheriff Wigington developed additional probable cause that the metal box contained contraband.  Therefore, the trial court did not err by denying Appellant's motion to suppress.  We overrule Appellant's first issue.

*Admission of Evidence*

In his second issue, Appellant argues that the trial court erred by overruling his objections to the admissibility of evidentiary items seized at the time of his arrest.  Appellant filed a motion in limine requesting that the State not mention or allude to Appellant engaging in any extraneous wrongs or acts in the presence of the jury.  The trial court granted Appellant's motion in limine.  The trial court later conducted a hearing outside the presence of the jury to consider Appellant's objections to the State's intent to offer evidence of the pills, fetish urine, and security badge found during the search of the vehicle.  *See* TEX. R. EVID. 103(b) ("When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal.")  Appellant argued that the evidence was not relevant to whether he possessed methamphetamine and that it was prejudicial.  The trial court overruled Appellant's objections and allowed the State to present evidence of the pills, fetish urine, and security badge found during the search.

Appellant asserts on appeal that the admission of these exhibits was improper under Rule 403 of the Texas Rules of Evidence.  We review a trial court's ruling under Rule 403 for an abuse of discretion.  *Pawlak v. State*, 420 S.W.3d 807, 810

(Tex. Crim. App. 2013). This standard requires an appellate court to uphold a trial court's evidentiary ruling when it is within the zone of reasonable disagreement. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We will uphold the trial court's ruling on the admission or exclusion of evidence if the ruling was proper under any legal theory or basis applicable to the case. *See Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403; *see Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). "Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render*, 347 S.W.3d at 921.

In reviewing a trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991)). When conducting a Rule 403 analysis, the trial court must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a

jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). Rule 403, however, does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 balancing test and determined that the evidence was admissible. *Id.*

The first *Gigliobianco* factor focuses on the inherent probative force of the proffered evidence. As the Court of Criminal Appeals explained in *Gigliobianco*, "probative value" is more than just relevance. 210 S.W.3d at 641. It refers to how strongly an item of evidence "serves to make more or less probable the existence of a fact of consequence to the litigation[,] coupled with the proponent's need for that item of evidence." *Id.* Appellant argues that the evidence of the untested pills, the fetish urine, and the security badge were not needed by the State and was used to prejudice the jury and make him "look bad." However, Appellant's theory at trial was that the vehicle did not belong to him, that many people drove the vehicle, and that he was unaware of the contents in the vehicle. He further argued at trial that the State did not prove intentional or knowing possession of the methamphetamine because there was no proof that "he was aware of his control of those drugs."

Appellant acknowledged at the time of the stop that he was aware of the fetish urine and security badge in the vehicle and offered an explanation for both items. Therefore, this evidence had probative value to show his awareness of the contents in the vehicle. In addition, the marihuana and pills provided an affirmative link to show Appellant's knowing possession of the methamphetamine. *See Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016). ("[W]hether the defendant possessed

other contraband or narcotics when arrested" is an affirmative link that connects the defendant to the knowing possession of contraband.)

With respect to the State's need for the evidence under the second *Gigliobianco* factor, we have already noted how the proffered evidence served to rebut Appellant's defense that he did not knowingly possess the methamphetamine. The remaining *Gigliobianco* factors focus on the potential negative effects of the proffered evidence. The third factor focuses on the tendency of the evidence to suggest a decision on an improper basis. While the proffered evidence was inherently inflammatory and prejudicial, it was not so extreme as to cause the jury to render a decision on an improper basis. The fourth factor focuses on the potential of the proffered evidence to confuse or distract the jury from the main issues. The fifth factor focuses on the potential of the proffered evidence to mislead the jury. The fourth and fifth factors weigh in favor of admission because the proffered evidence was probative of Appellant's knowledge of the presence of contraband inside the vehicle. Finally, the sixth factor focuses on the time needed to present the proffered evidence and whether it is cumulative of other evidence. The evidence of the other items found in the vehicle only spanned a few pages of the reporter's record and it was not cumulative of other evidence.

In summary, the evidence of the other items found in the vehicle was prejudicial. However, Rule 403 contemplates excluding evidence only when there is a "clear disparity" between the offered evidence's prejudice and its probative value. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). Considering the standard of review, the presumption favoring admissibility of relevant evidence, and the *Gigliobianco* factors, we cannot conclude that the trial court abused its discretion in overruling Appellant's Rule 403 objection. *See Hammer*, 296 S.W.3d at 568

11

("Because Rule 403 permits the exclusion of admittedly probative evidence, it is a remedy that should be used sparingly."). We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the trial court's judgment.

JOHN M. BAILEY

CHIEF JUSTICE

June 26, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.